**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DEBBIE PETRIZZO, RENEE HEATHER POLLY, BRANDY VAN BUREN, MELISSA LOTZMAN, JAMISON PURRY, and CHERYL COSTELLO, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>DeVRY EDUCATION GROUP INC., DeVRY UNIVERSITY, INC., and DeVRY/NEW YORK INC.<br><br>    Defendants. | Civil Action No.<br><br>Judge:<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Debbie Petrizzo, Renee Heather Polly, Brandy Van Buren, Melissa Lotzman, Jamison Purry, and Cheryl Costello ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendants DeVry Education Group Inc. ("DEG"), DeVry University, Inc. ("DVU"), and DeVry/New York Inc. ("DeVry New York") collectively "DeVry" or "Defendants"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1.   This is a class action against Defendants for falsely and misleadingly advertising the employment rates of DeVry graduates in their field. Defendants knew these representations to be false, but continued to make them over a long period and in a wide variety of media in order to induce students to enroll at DeVry and pay tuition to Defendants.

2.       DVU is a private, for-profit, post-secondary educational institution operated by Defendants.  It has more than fifty (50) campuses throughout the United States, spread across eighteen (18) states, as well as an online presence that reaches every state in the nation.  DVU's predecessor, DeVry Institute of Technology, began offering bachelor's degrees in 1970, and DVU now comprises five colleges and a graduate school of business.

3.       Since 1975, more than 870,000 students have enrolled at DVU or its predecessor, and approximately 278,000 undergraduate students have obtained degrees from DVU or its predecessor.

4.       Defendants have repeatedly and conspicuously maintained, for well over a decade, and until no earlier than January 2016, in their advertising that 90% of DVU graduates who were actively seeking employment obtained new jobs in their field of study within six months of graduation.  This representation is false.

5.       Defendants intended that prospective students rely on these claims when deciding to enroll at DVU.

6.       As a direct and proximate result of Defendants' false and misleading advertising claims and marketing practices, Plaintiffs and the members of the Classes, as defined herein, enrolled at DVU and obtained DVU degrees.  Plaintiffs relied on Defendants' representations that they would be highly likely to quickly obtain a new job in their chosen field of study as a result of obtaining these degrees.  In fact, none of the Plaintiffs were able to obtain a new job in their chosen field of study after graduation.

7.       Plaintiffs and each member of the Class paid tuition to DeVry.  Each Plaintiff and each member of the Class earned a degree, which as a result of Defendants' representations, was

2

not worth the amount paid for it. Plaintiffs and members of the Classes have suffered an ascertainable out-of-pocket loss.

8.      Plaintiffs seek relief in this action individually and on a class-wide basis for breach of the Illinois Consumer Fraud Act, 815 ILCS 505/1, *et seq.* other state consumer protection acts, and common law.

## THE PARTIES

9.      Plaintiff Debbie Petrizzo is a resident of Massapequa, New York. Plaintiff Petrizzo took online courses at DVU while residing in Arizona and graduated with a degree in Business Administration in 2011. Plaintiff Petrizzo saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

10.     Plaintiff Renee Heather Polly is a resident of Moberly, Missouri. Plaintiff Polly took online and in-person courses at DVU while residing in Missouri and graduated with a Bachelor of Science in Business Administration in 2004. Plaintiff Polly saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

11.     Plaintiff Randy Van Buren is a resident of Independence, Missouri. Plaintiff Polly took online and in-person courses at DVU while residing in Missouri and graduated with a degree in Telecommunications Management in 2002. Plaintiff Van Buren saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

12.     Plaintiff Melissa Lotzman is a resident of Colorado Springs, Colorado. Plaintiff Lotzman took in-person courses at DVU while residing in Colorado and graduated with a degree

in Computer Information Systems in 2005.  Plaintiff Lotzman saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

13.     Plaintiff Jamison Purry is a resident of Hillsdoro, Oregon.  Plaintiff Purry took online courses while residing in Oregon and graduated with a degree in Computer Information Systems in 2015.  Plaintiff Purry saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

14.     Plaintiff Cheryl Costello is a resident of Shawnee, Kansas.  Plaintiff Lotzman took in-person courses at DVU while residing in Kansas and graduated with a degree in Business and Finance in 2003.  Plaintiff Costello saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

15.     Defendant DeVry Education Group Inc. ("DEG") is a Delaware corporation with its principal place of business at 3005 Highland Parkway, Downers Grove, Illinois.  Until November 2013, it was known as DeVry, Inc.

16.     Defendant DeVry University, Inc. ("DVU") is a Delaware corporation with its principal place of business at 3005 Highland Parkway, Downers Grove, Illinois.  DVU is a subsidiary of DEG.

17.     Defendant DeVry/New York, Inc. ("DeVry NY") is a Delaware corporation that also does business as DeVry College of New York.  It is a subsidiary of DEG, with its principal place of business at 3005 Highland Parkway, Downers Grove, Illinois.

4

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from any Defendant.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, as Defendants do business throughout this District, and Defendants' principal places of business are all in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

20.     New student enrollment between 2008 and 2014 ranged between 29,000 and 49,000 students per year.

21.     DEG's total gross revenue between 2008 and mid-2015 exceeded $14.5 billion, and DVU's gross revenues between 2008 and mid-2015 exceeded $8.6 billion.

22.     In each fiscal year between 2011 and 2014, DVU spent more than $135 million advertising, marketing, or promoting its educational products and services.

23.     This advertising has taken the form of television commercials, web advertisements (including on DeVry's website), in-person sales pitches by agents of Defendants, radio spots, brochures, print advertisements, and other advertising or promotional materials. Among others, Defendants target high school students, current and former members of the military, and the unemployed.

24.     Defendants' actions have led to a suit by the Federal Trade Commission to enjoin its deceptive trade practices.  *See Federal Trade Commission v. DeVry Education Group, Inc. et al.*, Case No. 2:16-cv-579, C.D. Cal., filed January 27, 2016.

**The "90%" Representation**

25.     One of Defendants' key messages ubiquitous throughout Defendants' marketing is that obtaining a DVU degree is highly likely to result in obtaining a desirable job soon after graduation, especially in that student's chosen field of study.

26.     For many years, one of the primary methods by which Defendants' conveyed this message was a representation that 90% of DVU graduates who were actively seeking employment obtained new jobs in their field of study within six months of graduation.

27.     This "90%" representation has been claimed, at various points, by Defendants to apply for a specific year (often 2012) and at other points to all graduates since 1975.

28.     The 90% representation was not mere puffery; as described below, it was frequently stated with explanations, footnotes or definitions that contextualized it not as a general claim, but as a specific and verifiable figure, based on a specific period and specific criteria.

29.     Nor is this representation a mere unexamined carry-over from one set of marketing materials to the next.  Defendants have, at times, varied the figure slightly, using figures such as 87% or 92%, though the 90% representation remains the most common.

30.     The "90%" representation is a core component of Defendants' branding, and it appears pervasively throughout Defendants' advertising and marketing across various forms of media.

31.     For example, advertisements showing Defendants' "90%" representations have appeared in numerous television advertisements in both English and Spanish.   These

advertisements have run on national broadcast, satellite, and cable channels.  Among the many examples:

(a)     A widely-shown television ad in 2013 claimed, through an announcer, that "In 2012, 90% of DeVry University grads actively seeking employment had careers in their field in six months."  At the same time, a screen appeared showing the same message in text with "90%" in, by far, the largest font.  Following that text, another screen showed, "Join the 90%.  Learn how at devry.edu";

(b)     Ads with substantially similar announcements and text were shown throughout the 2010-2016 period, including in 2010, 2013, and 2014; and

(c)     A 2013 advertisement on devry.edu featured prominently a graphic that stated "In 2012, 90% of DeVry University GRADS actively seeking employment HAD CAREERS in their field within six months of graduation."  At the end of "CAREERS" was a footnote mark which, at the end of the webpage, said, "Figure based on 2012 graduates self-reporting data to DeVry University Career Services who were employed at graduation or actively seeking employment in their field after graduation.  Does not include graduates who were not actively seeking employment, as determined by DeVry University Career Services, or who did not report data on employment status to DeVry University Career Services.".

32.     Defendants have also advertised on YouTube, and have uploaded their advertisements to a YouTube channel available at https://www.youtube.com/user/TheDeVryUniversity/videos.  Several of these also contain versions of the "90%" representation, including "90% of our grads actively seeking employment

had careers in 6 months" and "In 2012, 90% of DeVry University grads actively seeking employment had careers in their field in six months. Learn how at devry.edu."

33.     Defendants have further disseminated or caused to be disseminated numerous brochures promoting DVU. One, directed toward college students, was made available in virtual format on its website between 2010 and 2015, which prominently included the statement, "For over 30 years, 90% of all DeVry graduates in the active job market have been employed in their field of study within six months of graduation*." The asterisk led to fine print at the bottom of the web page which stated, "Active job market includes those already employed prior to graduation." Other brochures disseminated or caused to be disseminated by DeVry during this time made substantially similar representations.

34.     Similarly, Defendants have also disseminated or caused to be disseminated print advertisements that contain similar versions of the "90%" representation. For example, during the Class Period, Defendants put forth a print advertisement that stated, "In 2012, 90% of DeVry University GRADS actively seeking employment HAD CAREERS in their field within six months of graduation*", followed by the phrase, "Join the 90%". The asterisk led to fine print which stated "Figure based on 2012 graduated self-reporting data to DeVry University Career Services who were employed at graduation or actively seeking employment in their field after graduation. Does not include master's degree graduates or graduates who were not actively seeking employment, as determined by DeVry, or who did not report data on employment status to DeVry."

35.     Further, on Twitter, Defendants have repeatedly used the "90%" representation. For example, on July 29, 2013, Defendants, tweeted, "'90% of #DeVry grads active in the job

market find employment in their field of study within 6 months.'  @DeVryUniv president Dave Pauldine."

36.    Additionally, in meetings with DVU representatives, including initial calls and interactions with self-described "Admissions Advisors," Defendants have made the 90% representation on numerous occasions.  A standard part of the initial call script from 2013 until at least early 2016 was to include the sentence, "The DeVry University difference includes outstanding career outcomes – In 2012, 90% of DeVry University grads actively seeking employment had careers in their field within six months of graduation."

37.    Admissions Advisors also routinely make or have made the "90%" representation regarding DeVry graduates, as instructed to do in DeVry training manuals.

**Defendant's Knowledge of Their False Representation**

38.    Defendants have relied upon files maintained by the DVU Career Services office to substantiate both its "90%" representation.  These files contain information about students' majors, graduation dates, employment, and DVU classification of their employment status.

39.    However, these files do not provide a reasonable basis for Defendants' "90%" representation.  Among other reasons for this, Defendants count a substantial number of DVU graduates who should be excluded from the "90%" figure.  For example, Defendants include a substantial portion of the graduates who, after graduation, continued with the same job they had at the time they enrolled at DVU.  Similarly, Defendants also routinely counted graduates who did not obtain jobs in their chosen fields of study as part of the "90%" representation.  These jobs included jobs that employers, industry experts, graduates, and consumers would not reasonably consider to be in the graduate's field of study.  Examples include DVU graduates working as customer service representatives, as food service workers, and as unpaid volunteers.

40.     Defendants also routinely excluded from the "90%" representation students who were actively seeking employment, including graduates who had self-classified as actively seeking employment and had been to job interviews in the preceding days or weeks before reclassification, as well as those who were applying or intending to apply for jobs while corresponding with the DVU Career Services office.

41.     Upon information and belief, the actual percentage of DVU graduates who, within six months of the time that time they graduated, could reasonably be considered to be employed "in their field" was and is markedly below 90%.

42.     In part, this is because Defendants had reason to question, and in fact, did question the reliability of the conclusions and information received in the income report.

43.     Among other things, the income report's statistics, which included information from several hundred individuals per graduation year, differed significantly from DVU's own directly-collected statistics.

**CLASS ACTION ALLEGATIONS**

44.     Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23 on behalf of all persons in the United States who, within the relevant statute of limitations period, obtained a degree from DVU, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Nationwide Class").

45.     Plaintiff Debbie Petrizzo seeks to represent a Class defined as all persons who obtained a degree from DVU while residing in Arizona or attending an Arizona campus, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Arizona Class").

46.     Plaintiff Melissa Lotzman seeks to represent a Class defined as all persons who obtained a degree from DVU while residing in Colorado or attending a Colorado campus, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Colorado Class").

47.     Plaintiff Cheryl Costello seeks to represent a Class defined as all persons who obtained a degree from DVU while residing in Kansas, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Kansas Class").

48.     Plaintiffs Renee Heather Polly and Randy Van Buren seek to represent a Class defined as all persons who obtained a degree from DVU while residing in Missouri or attending a Missouri campus, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Missouri Class").

49.     Plaintiff Jamison Purry seeks to represent a Class defined as all persons who obtained a degree from DVU while residing in Oregon, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Oregon Class").

50.     The Nationwide Class, the Arizona Class, the Colorado Class, the Kansas Class, the Missouri Class, and the Oregon Class are sometimes referred to as "the Class."  The Arizona Class, the Colorado Class, the Kansas Class, the Missouri Class, and the Oregon Class are referred to collectively as the "State Classes."

51.     Excluded from the Class are the Defendants, the officers and directors of the Defendants at all relevant times, members of their immediate families and their legal

11

representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

52.     The Class is so numerous that joinder of all members is impractical.  Although Plaintiffs do not yet know the exact size of the Classes, the DeVry graduates graduated from DeVry programs throughout the United States, live throughout the United States, and on information and belief, members of the Class number in the hundreds of thousands.

53.     The Class is ascertainable because their members can be identified by objective criteria and through Defendants' own records.  Individual notice can be provided to Class members "who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

54.     There are numerous questions of law and fact common to the Class which predominate over any individual actions or issues, including but not limited to whether the labeling and marketing of the benefits of a DeVry degree were false and misleading.

55.     Plaintiffs' claims are typical of the claims of the members of the Classes as all members of the Classes are similarly affected by Defendants' wrongful conduct.  Plaintiffs have no interests antagonistic to the interests of the other members of the Classes.  Plaintiffs and all members of the Classes have sustained economic injury arising out of Defendants' violations of common and statutory law as alleged herein.

56.     Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Class members they seek to represent, they have retained counsel that is competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of the Class members will be fairly and adequately protected by Plaintiffs and their counsel.

57.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims are consistently adjudicated.

## CONCEALMENT OF UNLAWFUL CONDUCT AND EQUITABLE TOLLING

58.     Plaintiffs disclaim any burden to plead facts regarding the statute of limitations. By its very nature, as alleged herein, Defendants' unlawful activity was self-concealing. By Defendants' affirmative acts, misrepresentations, and nondisclosures, any applicable statute of limitations on claims asserted by Plaintiffs and members of the Class have been and are tolled.

59.     Further, Defendants routinely updated their false and misleading representations, sometimes adjusting them one way or another slightly so as to make it appear that their representation was, in fact, valid.  These actions continued the conduct complained of until sometime following the filing of the lawsuit by the FTC discussed *supra*.

60.     Plaintiffs and members of the Class had no knowledge of the unlawful conduct alleged in this Complaint, or of any facts that could or would have led to the discovery thereof,

until at least January 2016. In the exercise of reasonable diligence, Plaintiffs could not have discovered Defendants' violations of law such that suit could be brought before January 2016.

**FIRST CLAIM FOR RELIEF**
**(Illinois Consumer Fraud and Deceptive Business Practices Act,**
**815 ILCS 505/1 *et seq.*)**
**(By All Plaintiffs on Behalf of the Nationwide Class)**

61. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein. Plaintiffs bring this Count individually and on behalf of the members of the Nationwide Class.

62. This cause of action is brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"). The express purpose of the ICFA is to "protect consumers" "against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . ." 815 ILCS 505/1.

63. Plaintiff and Nationwide Class members are "consumers" within the meaning of 815 ILCS 505/1(e) or otherwise sufficiently implicate consumer protection concerns under the ICFA

64. Defendant was engaged in "trade or commerce" as defined by 815 ILCS 505/1(f).

65. 815 ILCS 505/2 declares unlawful "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omissions of such material fact. . . in the conduct of any trade or commerce."

66. 815 ILCS 505/2 also states that "consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act." Defendants' unfair and deceptive practices are likely to mislead – and

14

have mislead – the consumer acting reasonably in the circumstances, and violate 815 ILCS 505/2 and 21 U.S.C. §352.

67.     Defendants have violated the ICFA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

68.     Plaintiffs and the Nationwide Class have been aggrieved by Defendants' unfair and deceptive practices in that they purchased Defendants' educational services, which they would not have purchased or would not have paid as much for had they known the true facts.

69.     The damages suffered by Plaintiffs and the Nationwide Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendants, as more fully described herein.

70.     Plaintiffs actions were akin to consumer actions insofar as Plaintiffs saw Defendants' advertisements and accepted Defendants' "90%" representation as it personally concerned them.

71.     Defendants' "90%" representation involved consumer protection concerns because Defendants made the "90%" representation specifically for the purposes of inducing enrollment and/or appearing to be a more desirable educational institution.  Further, Defendants' "90%" representation was specifically used for marketing purposes and to increase profits.

72.     Plaintiffs' relief would serve the public interest by protecting Class members and future prospective students from Defendants' conduct, by enjoining Defendants from their deceptive marketing practices, and by discouraging other for-profit educational institutions from making false and misleading representations regarding the acquisition of jobs for their graduates.

73.     Pursuant to 815 ILCS 505/10a, Plaintiffs and the Nationwide Class seek a court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

74.     Additionally, pursuant to 815 ILCS 505/10a, Plaintiffs and the Nationwide Class make claims for economic damages, punitive damages, and attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
### (Arizona Consumer Fraud Act, Ariz. Revised Stat. §§44-1521 *et. seq*.)
### (By Plaintiff Debbie Petrizzo On Behalf of the Arizona Class)

75.     Plaintiff Debbie Petrizzo repeats and re-alleges the allegations contained above, as if set forth fully herein.

76.     Plaintiff Debbie Petrizzo brings this claim individually and on behalf of the Arizona Class.

77.     Pursuant to Section 44-1522, Ariz. Rev. Stat., it is unlawful to engage in false, misleading or deceptive acts or practices in connection with the sale or advertisement of any merchandise.

78.     Section 44-1521 defines "merchandise" as "any objects, wares, goods, commodities, intangibles, real estate or services. . ."

79.     Plaintiff is a consumer within the meaning of the Act.

80.     Defendant's educational services are merchandise as defined within the scope of the Act.

81.     Defendant has engaged in deceptive or unfair acts or practices in violation of the ACFA by engaging in the acts and practices above, specifically the "90%" representation.

82.     These practices constitute fraud, false pretense, false promise, and/or misrepresentation on the part of Defendant.

83. Plaintiff Debbie Petrizzo relied on Defendant's deceptive representations in their purchases of Defendant's educational services, including the belief that 90% of all DeVry graduates found jobs within their chosen field of study within six months of graduation.

84. Plaintiff Debbie Petrizzo and members of the Arizona Class are entitled to damages including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendant as a result of such business acts or practices.

**THIRD CLAIM FOR RELIEF**
**(Violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq*.)**
**(By Plaintiff Melissa Lotzman On Behalf of the Colorado Class)**

85. Plaintiff Melissa Lotzman on behalf of herself and the Colorado Class, repeat and reassert each of the allegations contained above as if fully set forth herein.

86. Chapter 6-1-101 of the Colorado Consumer Protection Act ("CCPA") generally governs deceptive trade practices within the State of Colorado. Colo. Rev. Stat. § 6-1-105.

87. The CCPA governs trade practices affecting the sale of goods, services, or property. Colo. Rev. Stat. § 6-1-105.

88. The CCPA outlaws "mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property." Colo. Rev. Stat. § 6-1-105.

89. The CCPA also outlaws "[f]ail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." Colo. Rev. Stat. § 6-1-105.

90. Plaintiff is a consumer within the meaning of the CCPA.

91.    Defendants' educational services are "trade practices" within the meaning of the CCPA.

92.    In the course of business, Defendants actively misrepresented the actual likelihood of being able to find a job in their graduates' chosen field within six months of graduation.  Through this misrepresentation, Defendants deprived Plaintiff Melissa Lotzman and Colorado Class members of material facts regarding the value of a degree from DVU. Moreover, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices and/or concealment, suppression or omission of any material fact with intent that others rely upon such concealment or misstatement in connection with the sale of its educational services.

93.    Further, Defendants failed to disclose that their advertisements were based upon knowingly false figures which were shown in their advertisements with an intent to induce consumers to enroll at DVU.

94.    Defendants' actions as set forth above occurred in the conduct of trade or commerce.  Defendants were and are engaged in the sale of educational services on a for-profit basis within the State of Colorado.

95.    By failing to disclose the actual percentage of DVU graduates employed in their chosen field within six months of graduation and by marketing DVU degrees as highly likely to lead to obtaining a job within six months of graduation, Defendants have engaged in unfair or deceptive business practices in violation of the CCPA.

96.    Defendants' unfair or deceptive acts or practices, including the "90%" representation, willfully concealed or actively intended to mislead consumers, tended to create a false impression in potential and actual consumers of educational services, and in fact did

deceive reasonable consumers, including Plaintiff Melissa Lotzman and members of the Colorado Class about the true value of a DVU degree.

97.     Defendants knew or should have known that the "90%" representation was false and misleading.

98.     Defendants' misrepresentation regarding their actual job acquisition rates for students within six months of graduation made their degrees less valuable than if the "90%" representation had been accurate.

99.     Plaintiff Melissa Lotzman and members of the Colorado Class suffered an ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the actual job acquisition numbers for degrees conferred by DVU, Plaintiff Melissa Lotzman and members of the Colorado Class would not have enrolled at DVU.  Plaintiff Melissa Lotzman and members of the Colorado Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

100.    Defendants' unlawful acts and practices complained of herein affect the public interest.

101.    As a direct and proximate result of Defendants' violations of the CCPA, Plaintiff Melissa Lotzman and the Colorado Class have suffered injury-in-fact and/or actual damage.

102.    Defendants' conduct was knowing, willful, and/or intentional, and has caused injury-in-fact to Plaintiff Melissa Lotzman and member of the Colorado Class, and was therefore in "bad faith" under the terms of Colo. Rev. Stat. § 6-1-105.

103.    Defendants are liable to Plaintiff Melissa Lotzman and the Colorado Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as

well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under Colo. Rev. Stat. § 6-1-113.

## FOURTH CLAIM FOR RELIEF
### (Violation of the Kansas Consumer Protection Act, Kan. Ann. Stat. § 50-623, *et seq*.)
### (By Plaintiff Cheryl Costello On Behalf of the Kansas Class)

104. Plaintiff Cheryl Costello on behalf of herself and the Kansas Class, repeats and reasserts each of the allegations contained above as if fully set forth herein.

105. Chapter 50 of the Kansas Annotated Statutes generally governs consumer protection within the State of Kansas (the "KCPA"). Kan. Ann. Stat. § 50-623, *et seq*.

106. Under the KCPA, "consumer transaction" means "means a sale, lease, assignment or other disposition for value of property or services within this state . . . to a consumer; or a solicitation by a supplier with respect to any of these dispositions." Kan. Ann. Stat. § 50-624(c).

107. Under the KCPA, "supplier" means "manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer." Kan. Ann. Stat. § 50-624(l).

108. The KCPA outlaws "deceptive acts", which include "the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact" and "the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." Kan. Ann. Stat. § 50-626(b).

109. Plaintiff is a consumer within the meaning of the KCPA.

110. Defendants are "suppliers" within the meaning of the KCPA.

111. Defendants' educational services are "services" within the meaning of the KCPA.

112. The KCPA outlaws "unconscionable acts", which include acts in which "[t]he supplier took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor;" "the consumer was unable to receive a material benefit from the subject of the transaction;" "the transaction the supplier induced the consumer to enter into was excessively one sided in favor of the supplier;" and "the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment."  Kan. Ann. Stat. § 50-627(b).

113. In the course of business, Defendants willfully misrepresented the actual likelihood of being able to find a job in their graduates' chosen field within six months of graduation.  Through this misrepresentation, Defendants deceived Plaintiff Cheryl Costello and Kansas Class members with respect to material facts regarding the value of a degree from DVU. Further, Defendants have engaged in trade practices with a tendency or capacity to deceive. Moreover, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices and/or concealment, suppression or omission of any material fact with intent that others rely to their detriment upon such concealment or misstatement in connection with the sale of its educational services.

114. Further, Defendants, in the course of advertising and selling educational services, Defendants took advantage of Plaintiff Cheryl Costello and Kansas Class members' lack of knowledge and/or understanding of Defendants' actual employment figures.

115. Defendants' actions were excessively one-sided in favor of Defendants.

116. Defendants also allowed Plaintiff Cheryl Costello and Kansas Class members to enter in to a commercial transaction from which they would derive no benefit, and did so through

concealment of and/or deception as to material facts regarding the likelihood of DVU graduates of being able to find jobs in their chosen fields within six months of graduation.

117. Defendants' misrepresentation regarding their actual job acquisition rates for students within six months of graduation made their degrees less valuable than if the "90%" representation had been accurate. .

118. Defendants' unfair or deceptive acts or practices, including the "90%" representation, had a tendency or capacity to mislead, tended to create a false impression in potential and actual consumers of educational services, and were likely to and in fact did deceive reasonable consumers, including Plaintiff and members of the Kansas Class about the true value of a DVU degree.

119. Defendants knew or should have known that the "90%" representation was false and misleading.

120. Defendants' failure to disclose their actual job acquisition rates within six months of employment made their degrees less valuable than a degree from an institution which, in fact, could legitimately and accurately represent that 90% of its graduates were employed within their chosen field of study within six months of graduation.

121. Plaintiff Cheryl Costello and members of the Kansas Class suffered an ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the actual job acquisition numbers for degrees conferred by DVU, Plaintiff and members of the Kansas Class would not have enrolled at DVU. Plaintiff Cheryl Costello and members of the Kansas Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

122.     Defendants' unlawful acts and practices complained of herein affect the public interest.

123.     As a direct and proximate result of Defendants' violations of the KCPA, Plaintiff Cheryl Costello and the Kansas Class have suffered injury-in-fact and/or actual damage.

124.     Defendants are liable to Plaintiff Cheryl Costello and the Kansas Class for damages in amounts to be proven at trial, including reasonable attorneys' fees, and costs, as well as injunctive and appropriate ancillary relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under Kan. Ann. Stat. § 50-634.

**FIFTH CLAIM FOR RELIEF**
**(Violation of the Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.010, *et seq*.)**
**(By Plaintiffs Renee Heather Polly and Randy Van Buren On Behalf of the Missouri Class)**

125.     Plaintiffs Renee Heather Polly and Randy Van Buren on behalf of themselves and the Missouri Class, repeat and reassert each of the allegations contained above as if fully set forth herein.

126.     Chapter 407 of the Missouri Merchandising Practices Act (the "MMPA") generally governs unlawful business practices and the sale of advertisement of merchandise within the State of Missouri.  Mo. Ann. Stat. § 407.020.

127.     Under the MMPA, "merchandise" means "any objects, wares, goods, commodities, intangibles, real estate or services."  Mo. Ann. Stat. § 407.010(4).

128.     The MMPA outlaws "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce."  Mo. Ann. Stat. § 407.020.

129.    In the course of business, Defendants actively misrepresented the actual likelihood of being able to find a job in their graduates' chosen field within six months of graduation.  Through this misrepresentation, Defendants deprived Plaintiffs Renee Heather Polly and Randy Van Buren and Missouri Class members of material facts regarding the value of a degree from DVU.  Further, Defendants have engaged in trade practices with a tendency or capacity to deceive.  Moreover, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices and/or concealment, suppression or omission of any material fact with intent that others rely upon such concealment or misstatement in connection with the sale of its educational services.

130.    Defendants' misrepresentation regarding their actual job acquisition rates for students within six months of graduation made their degrees less valuable than if the "90%" representation had been accurate.

131.    Defendants' unfair or deceptive acts or practices, including the "90%" representation, had a tendency or capacity to mislead, tended to create a false impression in potential and actual consumers of educational services, and were likely to and in fact did deceive reasonable consumers, including Plaintiffs Renee Heather Polly and Randy Van Buren and members of the Missouri Class about the true value of a DVU degree.

132.    Defendants knew or should have known that the "90%" representation was false and misleading.

133.    Defendants' failure to disclose their actual job acquisition rates within six months of employment made their degrees less valuable than a degree from an institution which, in fact, could legitimately and accurate represent that 90% of its graduates were employed within their chosen field of study within six months of graduation.

134.    Plaintiffs Renee Heather Polly and Randy Van Buren and members of the Missouri Class suffered an ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the actual job acquisition numbers for degrees conferred by DVU, Plaintiffs Renee Heather Polly and Randy Van Buren and members of the Missouri Class would not have enrolled at DVU.  Plaintiffs Renee Heather Polly and Randy Van Buren and members of the Missouri Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

135.    Defendants' unlawful acts and practices complained of herein affect the public interest.

136.    As a direct and proximate result of Defendants' violations of the MMPA, Plaintiffs Renee Heather Polly and Randy Van Buren and the Missouri Class have suffered injury-in-fact and/or actual damage.

137.    Defendants are liable to Plaintiffs Renee Heather Polly and Randy Van Buren and the Missouri Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under Mo. Ann. Stat. § 407.025.

**SIXTH CLAIM FOR RELIEF**
**(Violation of the Oregon Unlawful Trade Practices Act, O.R.S. § 646.605, *et seq*.)**
**(By Plaintiff Jamison Purry On Behalf of the Oregon Class)**

138.    Plaintiff Jamison Purry on behalf of himself and the Oregon Class, repeats and reasserts each of the allegations contained above as if fully set forth herein.

139.    Chapter 646 of the Oregon Revised Statutes generally governs unlawful trade practices within the State of Oregon (the "OUTPA").  O.R.S. § 646.605, *et seq.*

140.    Under the OUTPA, "trade" and "commerce" mean "advertising, offering or distributing, whether by sale, rental or otherwise, any real estate, goods or services, and include any trade or commerce directly or indirectly affecting the people of this state."   O.R.S. § 646.605(8).

141.    Under the OUTPA, "unconscionable tactics" include actions which "[k]nowingly take[] advantage of a customer's physical infirmity, ignorance, illiteracy or inability to understand the language of the agreement" and "[k]nowingly permit[] a customer to enter into a transaction from which the customer will derive no material benefit.  O.R.S. § 646.605(9).

142.    The OUTPA outlaws "any unconscionable tactic in connection with selling, renting or disposing of real estate, goods or services, or collecting or enforcing an obligation" O.R.S. § 646.607.

143.    Further, the OUTPA outlaws practices which "[e]ngage[] in any other unfair or deceptive conduct in trade or commerce.  O.R.S. § 646.608(1)(u).

144.    In the course of business, Defendants actively misrepresented the actual likelihood of being able to find a job in their graduates' chosen field within six months of graduation.  Through this misrepresentation, Defendants deceived Plaintiff and Oregon Class members with respect to material facts regarding the value of a degree from DVU.  Further, Defendants have engaged in trade practices with a tendency or capacity to deceive.  Moreover, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices and/or concealment, suppression or omission of any material fact with intent that others rely upon such concealment or misstatement in connection with the sale of its educational services.

145.    Further, Defendants, in the course of advertising and selling educational services, Defendants took advantage of Plaintiff and Oregon Class members' lack of knowledge and/or understanding of Defendants' actual employment figures.

146.    Defendants also allowed Plaintiff Jamison Purry and Oregon Class members to enter in to a commercial transaction from which they would derive no benefit.

147.    By failing to disclose the actual percentage of DVU graduates employed in their chosen field within six months of graduation and by marketing DVU degrees as highly likely to lead to obtaining a job within six months of graduation, Defendants have engaged in unfair or deceptive business practices in violation of the OUTPA.

148.    Defendants' unfair or deceptive acts or practices, including the "90%" representation, had a tendency or capacity to mislead, tended to create a false impression in potential and actual consumers of educational services, and were likely to and in fact did deceive reasonable consumers, including Plaintiff Jamison Purry and members of the Oregon Class about the true value of a DVU degree.

149.    Defendants knew or should have known that the "90%" representation was false and misleading.

150.    Defendants' misrepresentation regarding their actual job acquisition rates for students within six months of graduation made their degrees less valuable than if the "90%" representation had been accurate.

151.    Plaintiff Jamison Purry and members of the Oregon Class suffered an ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the actual job acquisition numbers for degrees conferred by DVU, Plaintiff Jamison Purry and members of the Oregon Class would not have enrolled at

DVU.  Plaintiff Jamison Purry and members of the Oregon Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

152.    Defendants' unlawful acts and practices complained of herein affect the public interest.

153.    As a direct and proximate result of Defendants' violations of the OUTPA, Plaintiff Jamison Purry and the Oregon Class have suffered injury-in-fact and/or actual damage.

154.    Defendants are liable to Plaintiff Jamison Purry and the Oregon Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under O.R.S. § 646.638.

155.    Pursuant to O.R.S. § 646.638(2), notice of this complaint has been mailed upon filing to the Oregon Attorney General.

### SEVENTH CLAIM FOR RELIEF
**(Unjust Enrichment)**
**(By All Plaintiffs on Behalf of the Nationwide Class)**

156.    Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

157.    Plaintiffs bring this Count individually and on behalf of the members of the Nationwide Class.

158.    Plaintiffs and members of the Nationwide Class conferred benefits on Defendants by purchasing educational services.

159.    Defendants have been unjustly enriched in retaining revenues derived from Plaintiffs and Class members' purchases of the educational services.  Retention of that revenue under these circumstances is unjust and inequitable because Defendants misrepresented facts

concerning the characteristics, qualities, and value of the educational services and caused Plaintiffs and Class members to purchase the educational services and to pay more for the educational services, which they would not have done had the true facts been known.

160. Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, Defendants must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

**WHEREFORE**, Plaintiffs prays for relief and judgment, as follows:

A. Determining that this action is a proper class action;

B. For an order declaring that the Defendants' conduct violates the statutes referenced herein;

C. Awarding compensatory and punitive damages in favor of Plaintiffs, members of the Nationwide Class and the Illinois Class against Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

D. Awarding injunctive relief against Defendants to prevent Defendants from continuing their ongoing unfair, unconscionable, and/or deceptive acts and practices;

E. For an order of restitution and/or disgorgement and all other forms of equitable monetary relief;

F. Awarding Plaintiffs and members of the Classes their reasonable costs and expenses incurred in this action, including attorney's fees; and

G. Awarding such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims so triable in this action.

Dated: October 14, 2016

Respectfully submitted:

By: */s/ Theodore B. Bell*
Theodore B. Bell
Carl Malmstrom
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLC**
One Dearborn Street, Suite 2122
Chicago, Illinois 60603
Tel: (312) 984-0000
Fax: (312) 212-4401
tbell@whafh.com
malmstrom@whafh.com

Thomas H. Burt
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
Tel: (212) 545-4600
Fax: (212) 545-4653
burt@whafh.com

Thomas J. McKenna
Gregory M. Egleston
**GAINEY MCKENNA & EGLESTON**
440 Park Avenue South, 5th Floor
New York, New York 10016
Tel: (212) 983-1300
Fax: (212)983-0383
egleston@gme-law.com
tjmckenna@gme-law.com

*Counsel for Plaintiffs and the Putative Class*