**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

DEBBIE PETRIZZO, RENEE HEATHER
POLLY, BRANDY VAN BUREN,
MELISSA LOTZMAN, JAMISON
PURRY, CHERYL COSTELLO, JAIRO
JARA, ELIJAH MORGAN, STEVEN
NICKENS, JULIE RAMROOP, JORGE
RIVAS, DAVID VIGLIELMO, JENNIFER
WALLACE, SUZANE APODACA,
JORGE MUNOZ, ALEX HABERER,
ANNETTE PEARSON, THOMAS
PEARSON, MARIEL JENNINGS,
DeLEON McKEE, KENYA
MONTGOMERY, KIRSTINE HOLINESS,
DAKAR VILLA, ASHLEY DELLEN,
DARIUS BRYANT, NIKITA BENSON,
ERIC STONE, JOSH ABLIAN, ROBYN
PETERSEN, STEPHANIE CUMPTON,
CHRISTOPHER CONDIE, DENISSE
PEREZ, HEATHER ANDERSON,
CEDRIC HOLLOWAY, ETHEL
HOLLOWAY, ELIHU GUISTE, STEVEN
V. DIAZ, RHONDA GARRISON, and
LYNDA CRILLEY Individually And On
Behalf Of All Others Similarly Situated,

          Plaintiffs,

    v.

DeVRY EDUCATION GROUP INC.,
DeVRY UNIVERSITY, INC., and
DeVRY/NEW YORK INC.,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 1:16-cv-9754

Judge: Hon. Manish S. Shah

**JURY TRIAL DEMANDED**

## CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Debbie Petrizzo, Renee Heather Polly, Brandy Van Buren, Melissa Lotzman,

Jamison Purry, Cheryl Costello, Jairo Jara, Elijah Morgan, Steven Nickens, Julie Ramroop,

Jorge Rivas, David Viglielmo, Jennifer Wallace, Suzane Apodaca, Jorge Munoz, Alex

Haberer, Annette Pearson, Thomas Pearson, Mariel Jennings, DeLeon McKee, Kenya Montgomery, Kirstine Holiness, Dakar Villa, Ashley Dellen, Darius Bryant, Nikita Benson, Eric Stone, Josh Ablian, Robyn Petersen, Stephanie Cumpton, Christopher Condie, Denisse Perez, Heather Anderson, Cedric Holloway, Ethel Holloway, Elihu Guiste, Steven V. Diaz, Rhonda Garrison, and Lynda Crilley ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendants DeVry Education Group Inc. ("DEG"), DeVry University, Inc. ("DVU"), and DeVry/New York Inc. ("DeVry New York") collectively "DeVry" or "Defendants"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action against Defendants for falsely and misleadingly advertising the employment rates of DeVry graduates in their field. Defendants knew these representations to be false, but continued to make them over a long period and in a wide variety of media in order to induce students to enroll at DeVry and pay tuition to Defendants.

2.      DVU is a private, for-profit, post-secondary educational institution operated by Defendants. It has more than fifty (50) campuses throughout the United States, spread across eighteen (18) states, as well as an online presence that reaches every state in the nation. DVU's predecessor, DeVry Institute of Technology, began offering bachelor's degrees in 1970, and DVU now comprises five colleges and a graduate school of business.

3.      Since 1975, more than 870,000 students have enrolled at DVU or its predecessor, and approximately 278,000 undergraduate students have obtained degrees from DVU or its predecessor.

2

4.      Defendants have repeatedly and conspicuously maintained, for well over a decade, and until no earlier than January 2016, in their advertising that 90% of DVU graduates who were actively seeking employment obtained new jobs in their field of study within six months of graduation.  This representation is false.

5.      Defendants intended that prospective students rely on these claims when deciding to enroll at DVU.

6.      As a direct and proximate result of Defendants' false and misleading advertising claims and marketing practices, Plaintiffs and the members of the Class, as defined herein, enrolled at DVU and obtained DVU degrees.  Plaintiffs relied on Defendants' representations that they would be highly likely to quickly obtain a new job in their chosen field of study as a result of obtaining these degrees.  In fact, none of the Plaintiffs were able to obtain a new job in their chosen field of study after graduation.

7.      Plaintiffs and each member of the Class paid tuition to DeVry.  Each Plaintiff and each member of the Class earned a degree, which as a result of Defendants' representations, was not worth the amount paid for it.  Plaintiffs and members of the Class have suffered an ascertainable out-of-pocket loss.

8.      Plaintiffs seek relief in this action individually and on a class-wide basis for breach of the Illinois Consumer Fraud Act, 815 ILCS 505/1, *et seq.* other state consumer protection acts, and common law.

<u>**THE PARTIES**</u>

<u>**Plaintiffs**</u>

9.      Plaintiff Debbie Petrizzo is a resident of Massapequa, New York.  Plaintiff Petrizzo took online courses at DVU while residing in Arizona and graduated with a degree in

Business Administration in 2011. Plaintiff Petrizzo saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

10.     Plaintiff Renee Heather Polly is a resident of Moberly, Missouri. Plaintiff Polly took online and in-person courses at DVU while residing in Missouri and graduated with a Bachelor of Science in Business Administration in 2004. Plaintiff Polly saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

11.     Plaintiff Brandy Van Buren is a resident of Independence, Missouri. Plaintiff Van Buren took online and in-person courses at DVU while residing in Missouri and graduated with a degree in Telecommunications Management in 2002. Plaintiff Van Buren saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

12.     Plaintiff Melissa Lotzman is a resident of Colorado Springs, Colorado. Plaintiff Lotzman took in-person courses at DVU while residing in Colorado and graduated with a degree in Computer Information Systems in 2005. Plaintiff Lotzman saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

13.     Plaintiff Jamison Purry is a resident of Hillsboro, Oregon. Plaintiff Purry took online courses while residing in Oregon and graduated with a degree in Computer Information Systems in 2015. Plaintiff Purry saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

14.    Plaintiff Cheryl Costello is a resident of Shawnee, Kansas. Plaintiff Costello took in-person courses at DVU while residing in Kansas and graduated with a degree in Business and Finance in 2003. Plaintiff Costello saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

15.    Plaintiff Jairo Jara is a resident of Hollywood, Florida. Plaintiff Jara took in-person courses at DVU while residing in New Jersey and graduated with a Bachelor of Science degree in Network and Communications Management in 2006. Plaintiff Jara saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

16.    Plaintiff Elijah Morgan is a resident of Jacksonville, Florida. Plaintiff Morgan took online and in-person courses at DVU while residing in Florida and graduated with a Bachelor of Arts degree in Technical Management in 2010 and a Master of Arts degree in Business Administration in 2013. Plaintiff Morgan saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

17.    Plaintiff Steven Nickens is a resident of Parkville, Maryland. Plaintiff Nickens took online and in-person courses at DVU while residing in Maryland and California and graduated with a Bachelor of Science degree in Network and Communications Management in 2009. Plaintiff Nickens saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

18.    Plaintiff Julie Ramroop is a resident of Brooklyn, New York. Plaintiff Ramroop

5

took on-line courses at DVU while residing in New York and graduated with a Master's in Business degree in Administration in 2010.  Plaintiff Ramroop saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

19.     Plaintiff Jorge Rivas is a resident of Highland, California.  Plaintiff Rivas took in-person courses at DVU while residing in California and graduated with a Bachelor of Science degree in Telecommunications and Management in 2003.  Plaintiff Rivas saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

20.     Plaintiff David Viglielmo is a resident of Tinley Park, Illinois.  Plaintiff Viglielmo took in-person courses while residing in Illinois and graduated with a Bachelor of Science degree in Technical Management in 2012.  Plaintiff Viglielmo saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

21.     Plaintiff Jennifer Wallace is a resident of Canal Winchester, Ohio.  Plaintiff Wallace took in-person courses at DVU while residing in Ohio and graduated with a Bachelor of Arts degree in Business Information Systems in 2001, a Master of Business degree in Administration in 2005 and a Master of Science degree in Project Management in 2016.  Plaintiff Wallace saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

22.     Plaintiff Suzane Apodaca is a resident of Bonney Lake, Washington.  Plaintiff Apodaca took in-person and on-line courses while residing in Washington and graduated with a degree in Business Administration in accounting in 2012.  Plaintiff Apodaca saw and relied upon

Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

23.     Plaintiff Alex Haberer is a resident of Vermillion, South Dakota.  Plaintiff Haberer took in-person and on-line courses while residing in Washington and graduated with a degree in Game and Simulation Programming in 2010.  Plaintiff Haberer saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

24.     Plaintiff Jorge Munoz is a resident of Phoenix, Arizona.  Plaintiff Munoz took in-person and on-line courses while residing in Arizona and graduated with a Bachelor of Arts degree in Computer Information Systems in 2011.  Plaintiff Munoz saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

25.     Plaintiff Annette Pearson is a resident of Simi Valley, California.  Plaintiff A. Pearson took in-person courses while residing in Illinois and on-line courses while residing in North Carolina and graduated with a Bachelor of Arts degree in Business Information System in 2007, a Masters' in Business degree in Administration and Project Management in 2009 and a Masters' degree in Public Administration in 2011.  Plaintiff A. Pearson saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

26.     Plaintiff Thomas Pearson is a resident of Simi Valley, California.  Plaintiff T. Pearson took on-line courses while residing in North Carolina and graduated with a Bachelor of Science degree in Technical Management in 2011 and a Masters' in Network & Communication Management in 2014.   Plaintiff T. Pearson saw and relied upon Defendants' "90%"

representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

27.   Plaintiff Mariel Jennings is a resident of Atlanta, Georgia.  Plaintiff Jennings took on-line courses and in-person courses while residing in Georgia and graduated with a Master of Business Administration in Human Resources degree in 2010.  Plaintiff Jennings saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

28.   Plaintiff DeLeon McKee is a resident of Jonesboro, Georgia.  Plaintiff Jennings took on-line courses and in-person courses while residing in Georgia and graduated with a Bachelor of Business Administration in Operations Management degree in 2012.  Plaintiff Jennings saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

29.   Plaintiff Kenya Montgomery is a resident of New Brunswick, New Jersey. Plaintiff Montgomery took in-person courses while residing in New Jersey and graduated with an Associate's degree in Network and Communications in 2002; a Master's degree in Network and Communications in 2008; and a Master's in Business Administration in 2013.  Plaintiff Montgomery saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

30.   Plaintiff Kirstine Holiness is a resident of Indianapolis, Indiana.  Plaintiff Holiness took in-person courses while residing in Ohio and graduated with a Bachelor of Arts degree in Accounting in 2001.  Plaintiff Holiness saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen

8

field of study within six months of graduation.

31.     Plaintiff Dakar Villa is a resident of Goodyear, Arizona.  Plaintiff Villa took in-person courses while residing in Georgia and graduated with a Master of Business Administration in Business Operations degree in 1992.  Plaintiff Villa saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

32.     Plaintiff Ashley Dellen is a resident of Spring Hills, Kansas.  Plaintiff Dellen took on-line courses and in-person courses while residing in Missouri and graduated with a Master of Business Administration in Accounting degree in 2013.  Plaintiff Dellen saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

33.     Plaintiff Darius Bryant is a resident of Durham, North Carolina.  Plaintiff Bryant took on-line courses while residing in North Carolina and graduated with a Bachelor of Science in Business Information Systems and Technical Management degree in 2014.  Plaintiff Bryant saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

34.     Plaintiff Nikita Benson is a resident of Philadelphia, Pennsylvania.  Plaintiff Benson took on-line courses and in-person courses while residing in Pennsylvania and graduated with a Bachelor of Science in Technical Management degree in 2005.  Plaintiff Benson saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

35.     Plaintiff Eric Stone is a resident of Watertown, Massachusetts.  Plaintiff Stone took on-line courses and in-person courses while residing in Missouri and graduated with a

Bachelor of Science in Technical Management degree in 2012. Plaintiff Stone saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

36.    Plaintiff Robyn Petersen is a resident of Paia, Hawaii. Plaintiff Petersen took on-line courses while residing in California and graduated with a Bachelor of Science degree in Human Resources Management in 2008. Plaintiff Petersen saw and relied upon Defendants' "90%" representation in choosing to enroll in DVU and was not able to find a job within her chosen field of study within six months of graduation.

37.    Plaintiff Josh Ablian is a resident of Mesa, Arizona. Plaintiff Ablian took on-line courses and in-person courses while residing in Missouri and graduated with a Bachelor of Science in Computer Information Systems in 2011. Plaintiff Ablian saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

38.    Plaintiff Stephanie Cumpton is a resident of Lees Summit, Missouri. Plaintiff Cumpton took on-line courses and in-person courses while residing in Missouri and graduated with a Bachelor of Arts in Technical Management degree in 2014. Plaintiff Cumpton saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

39.    Plaintiff Christopher Condie is a resident of Prairie Village, Kansas. Plaintiff Condie took on-line courses and in-person courses while residing in Missouri and graduated with a Bachelor of Science in Technical Management degree in 2013. Plaintiff Condie saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

40.     Plaintiff Denisse Perez is a resident of Shawnee, Kansas.  Plaintiff Perez took in-person courses while residing in Missouri and graduated with a Bachelor of Science in Business Information Systems degree in 2003.  Plaintiff Perez saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

41.     Plaintiff Heather Anderson is a resident of South Jordan, Utah.  Plaintiff Anderson took on-line courses and in-person courses while residing in Utah and Missouri and received a Bachelor of Science in Business Administration from DeVry in Sandy, Utah in 2010. Further, Plaintiff Anderson received a Master of Business Administration from DeVry in St. Louis, Missouri in 2013.  Plaintiff Anderson saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

42.     Plaintiff Cedric Holloway is a resident of Locust Grove, Georgia.  Plaintiff C. Holloway took on-line courses and in-person courses while residing in Georgia and graduated with a Bachelor of Science in Technical Management degree in 2012.  Plaintiff C. Holloway saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

43.     Plaintiff Ethel Holloway is a resident of Locust Grove, Georgia.  Plaintiff E. Holloway took on-line courses and in-person courses while residing in Georgia and graduated with a Bachelor of Science in Business Administration degree in 2014.  Plaintiff E. Holloway saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

44.     Plaintiff Elihu Guiste is a resident of Houston, Texas.  Plaintiff Guiste took in-

person and on-line courses while residing in Florida and graduated with a Bachelor of Science degree in Computer Engineering Technology in 2009. Plaintiff Guiste saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

45. Plaintiff Steven Diaz is a resident of Whittier, California. Plaintiff Diaz took on-line courses and in-person courses while residing in California and graduated with an Associate of Science degree in 2012. Plaintiff Diaz saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

46. Plaintiff Rhonda Garrison is a resident of Lexington, Missouri. Plaintiff Garrison took on-line courses and in-person courses while residing in Missouri and graduated with a Bachelor of Science degree in Computer Information Systems with a specialization in Information Systems Security in 2014. Plaintiff Garrison saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

47. Plaintiff Lynda Crilley is a resident of Kansas City, Missouri. Plaintiff Crilley took on-line courses while residing in Ohio and in-person courses while residing in Missouri and graduated with a Bachelor of Business Administration in 2012. Plaintiff Crilley saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

48. Defendant DeVry Education Group Inc. ("DEG") is a Delaware corporation with its principal place of business at 3005 Highland Parkway, Downers Grove, Illinois. Until November 2013, it was known as DeVry, Inc.

12

49.     Defendant DeVry University, Inc. ("DVU") is a Delaware corporation with its principal place of business at 3005 Highland Parkway, Downers Grove, Illinois.  DVU is a subsidiary of DEG.

50.     Defendant DeVry/New York, Inc. ("DeVry NY") is a Delaware corporation that also does business as DeVry College of New York.  It is a subsidiary of DEG, with its principal place of business at 3005 Highland Parkway, Downers Grove, Illinois.

## JURISDICTION AND VENUE

51.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from any Defendant.

52.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, as Defendants do business throughout this District, and Defendants' principal places of business are all in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

53.     New student enrollment between 2008 and 2014 ranged between 29,000 and 49,000 students per year.

54.     DEG's total gross revenue between 2008 and mid-2015 exceeded $14.5 billion, and DVU's gross revenues between 2008 and mid-2015 exceeded $8.6 billion.

55.     In each fiscal year between 2011 and 2014, DVU spent more than $135 million advertising, marketing, or promoting its educational products and services.

56.     This advertising has taken the form of television commercials, web

advertisements (including on DeVry's website), in-person sales pitches by agents of Defendants, radio spots, brochures, print advertisements, and other advertising or promotional materials. Among others, Defendants target high school students, current and former members of the military, and the unemployed.

57.     Defendants' actions have led to a suit by the Federal Trade Commission to enjoin its deceptive trade practices. *See Federal Trade Commission v. DeVry Education Group, Inc. et al.*, Case No. 2:16-cv-579, C.D. Cal., filed January 27, 2016.

**The "90%" Representation**

58.     One of Defendants' key messages ubiquitous throughout Defendants' marketing is that obtaining a DVU degree is highly likely to result in obtaining a desirable job soon after graduation, especially in that student's chosen field of study.

59.     For many years, one of the primary methods by which Defendants' conveyed this message was a representation that 90% of DVU graduates who were actively seeking employment obtained new jobs in their field of study within six months of graduation.

60.     This "90%" representation has been claimed, at various points, by Defendants to apply for a specific year (often 2012) and at other points to all graduates since 1975.

61.     The 90% representation was not mere puffery; as described below, it was frequently stated with explanations, footnotes or definitions that contextualized it not as a general claim, but as a specific and verifiable figure, based on a specific period and specific criteria.

62.     Nor is this representation a mere unexamined carry-over from one set of marketing materials to the next. Defendants have, at times, varied the figure slightly, using figures such as 87% or 92%, though the 90% representation remains the most common.

63.     The "90%" representation is a core component of Defendants' branding, and it

appears pervasively throughout Defendants' advertising and marketing across various forms of media.

64. For example, advertisements showing Defendants' "90%" representations have appeared in numerous television advertisements in both English and Spanish. These advertisements have run on national broadcast, satellite, and cable channels. Among the many examples:

(a) A widely-shown television ad in 2013 claimed, through an announcer, that "In 2012, 90% of DeVry University grads actively seeking employment had careers in their field in six months." At the same time, a screen appeared showing the same message in text with "90%" in, by far, the largest font. Following that text, another screen showed, "Join the 90%. Learn how at devry.edu";

(b) Ads with substantially similar announcements and text were shown throughout the 2010-2016 period, including in 2010, 2013, and 2014; and

(c) A 2013 advertisement on devry.edu featured prominently a graphic that stated "In 2012, 90% of DeVry University GRADS actively seeking employment HAD CAREERS in their field within six months of graduation." At the end of "CAREERS" was a footnote mark which, at the end of the webpage, said, "Figure based on 2012 graduates self-reporting data to DeVry University Career Services who were employed at graduation or actively seeking employment in their field after graduation. Does not include graduates who were not actively seeking employment, as determined by DeVry University Career Services, or who did not report data on employment status to DeVry University Career Services."

65. Defendants have also advertised on YouTube, and have uploaded their

advertisements to a YouTube channel available at https://www.youtube.com/user/TheDeVryUniversity/videos. Several of these also contain versions of the "90%" representation, including "90% of our grads actively seeking employment had careers in 6 months" and "In 2012, 90% of DeVry University grads actively seeking employment had careers in their field in six months. Learn how at devry.edu."

66.     Defendants have further disseminated or caused to be disseminated numerous brochures promoting DVU. One, directed toward college students, was made available in virtual format on its website between 2010 and 2015, which prominently included the statement, "For over 30 years, 90% of all DeVry graduates in the active job market have been employed in their field of study within six months of graduation*." The asterisk led to fine print at the bottom of the web page which stated, "Active job market includes those already employed prior to graduation." Other brochures disseminated or caused to be disseminated by DeVry during this time made substantially similar representations.

67.     Similarly, Defendants have also disseminated or caused to be disseminated print advertisements that contain similar versions of the "90%" representation. For example, during the Class Period, Defendants put forth a print advertisement that stated, "In 2012, 90% of DeVry University GRADS actively seeking employment HAD CAREERS in their field within six months of graduation*", followed by the phrase, "Join the 90%". The asterisk led to fine print which stated "Figure based on 2012 graduated self-reporting data to DeVry University Career Services who were employed at graduation or actively seeking employment in their field after graduation. Does not include master's degree graduates or graduates who were not actively seeking employment, as determined by DeVry, or who did not report data on employment status to DeVry."

68.     Further, on Twitter, Defendants have repeatedly used the "90%" representation. For example, on July 29, 2013, Defendants, tweeted, "'90% of #DeVry grads active in the job market find employment in their field of study within 6 months.' @DeVryUniv president Dave Pauldine."

69.     Additionally, in meetings with DVU representatives, including initial calls and interactions with self-described "Admissions Advisors," Defendants have made the 90% representation on numerous occasions. A standard part of the initial call script from 2013 until at least early 2016 was to include the sentence, "The DeVry University difference includes outstanding career outcomes – In 2012, 90% of DeVry University grads actively seeking employment had careers in their field within six months of graduation."

70.     Admissions Advisors also routinely make or have made the "90%" representation regarding DeVry graduates, as they are instructed to do in DeVry training manuals.

**Defendant's Knowledge of Their False Representation**

71.     Defendants have relied upon files maintained by the DVU Career Services office to substantiate both its "90%" representation. These files contain information about students' majors, graduation dates, employment, and DVU classification of their employment status.

72.     However, these files do not provide a reasonable basis for Defendants' "90%" representation. Among other reasons for this, Defendants count a substantial number of DVU graduates who should be excluded from the "90%" figure. For example, Defendants include a substantial portion of the graduates who, after graduation, continued with the same job they had at the time they enrolled at DVU. Similarly, Defendants also routinely counted graduates who did not obtain jobs in their chosen fields of study as part of the "90%" representation. These jobs included jobs that employers, industry experts, graduates, and consumers would not reasonably

consider to be in the graduate's field of study. Examples include DVU graduates working as customer service representatives, as food service workers, and as unpaid volunteers.

73.     Defendants also routinely excluded from the "90%" representation students who were actively seeking employment, including graduates who had self-classified as actively seeking employment and had been to job interviews in the preceding days or weeks before reclassification, as well as those who were applying or intending to apply for jobs while corresponding with the DVU Career Services office.

74.     Upon information and belief, the actual percentage of DVU graduates who, within six months of the time that time they graduated, could reasonably be considered to be employed "in their field" was and is markedly below 90%.

75.     In part, this is because Defendants had reason to question, and in fact, did question the reliability of the conclusions and information received in the income report.

76.     Among other things, the income report's statistics, which included information from several hundred individuals per graduation year, differed significantly from DVU's own directly-collected statistics.

## CLASS ACTION ALLEGATIONS

77.     Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 on behalf of all persons in the United States who, within the relevant statute of limitations period, obtained a degree from DVU, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Nationwide Class").

78.     Plaintiffs Debbie Petrizzo and Jorge Munoz seek to represent a Class defined as all persons who obtained a degree from DVU while residing in Arizona or attending an Arizona campus, but were unable to find employment within their chosen field of study within six months

of graduation, as advertised (the "Arizona Class").

79.     Plaintiffs Jorge Rivas, Steven Nickens, Steven Diaz and Robyn Petersen seek to represent a Class defined as all persons who obtained a degree from DVU while residing in California or attending a California campus, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "California Class")

80.     Plaintiff Melissa Lotzman seeks to represent a Class defined as all persons who obtained a degree from DVU while residing in Colorado or attending a Colorado campus, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Colorado Class").

81.     Plaintiffs Elijah Morgan and Elihu Guiste seek to represent a Class defined as all persons who obtained a degree from DVU while residing in Florida or attending a Florida campus, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Florida Class").

82.     Plaintiffs David Viglielmo, Annette Pearson, and Dakar Villa seek to represent a Class defined as all persons who obtained a degree from DVU while residing in Illinois or attending an Illinois campus, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Illinois Class").

83.     Plaintiff Cheryl Costello seeks to represent a Class defined as all persons who obtained a degree from DVU while residing in Kansas, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Kansas Class").

84.     Plaintiff Steven Nickens seeks to represent a Class defined as all persons who obtained a degree from DVU while residing in Maryland, but were unable to find employment

within their chosen field of study within six months of graduation, as advertised (the "Maryland Class").

85.    Plaintiffs Renee Heather Polly, Brandy Van Buren, Ashley Dellen, Eric Stone, Josh Ablian, Stephanie Cumpton, Christopher Condie, Denisse Perez, Heather Anderson, Rhonda Garrison, and Lynda Crilley seek to represent a Class defined as all persons who obtained a degree from DVU while residing in Missouri or attending a Missouri campus, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Missouri Class").

86.    Plaintiffs Darius Bryant, Thomas Pearson, and Annette Pearson seek to represent a Class defined as all persons who obtained a degree from DVU while residing in North Carolina or attending a North Carolina campus, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "North Carolina Class").

87.    Plaintiffs Jairo Jara and Kenya Montgomery seek to represent a Class defined as all persons who obtained a degree from DVU while residing in New Jersey or attending a New Jersey campus, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "New Jersey Class").

88.    Plaintiffs Julie Ramroop seeks to represent a Class defined as all persons who obtained a degree from DVU while residing in New York or attending a New York campus, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "New York Class").

89.    Plaintiffs Jennifer Wallace, Kirstine Holiness and Lynda Crilley seek to represent a Class defined as all persons who obtained a degree from DVU while residing in Ohio or attending an Ohio campus, but were unable to find employment within their chosen field of study

20

within six months of graduation, as advertised (the "Ohio Class").

90.    Plaintiff Jamison Purry seeks to represent a Class defined as all persons who obtained a degree from DVU while residing in Oregon, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Oregon Class").

91.    Plaintiff Nikita Benson seeks to represent a Class defined as all persons who obtained a degree from DVU while residing in Pennsylvania or attending a Pennsylvania campus, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Pennsylvania Class").

92.    Plaintiff Heather Anderson seeks to represent a Class defined as all persons who obtained a degree from DVU while residing in Utah, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Utah Class").

93.    Plaintiffs Suzane Apodaca and Alex Haberer seek to represent a Class defined as all persons who obtained a degree from DVU while residing in Washington or attending a Washington campus, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Washington Class").

94.    The Nationwide Class, the Arizona Class, the California Class, the Colorado Class, the Florida Class, the Illinois Class, the Kansas Class, the Maryland Class, the Missouri Class, the North Carolina Class, the New Jersey Class, the New York Class, the Ohio Class, the Oregon Class, the Pennsylvania Class, the Utah Class, and the Washington Class are sometimes referred to as "the Class."

95.    The Arizona Class, the California Class, the Colorado Class, the Florida Class, the Illinois Class, the Kansas Class, the Maryland Class, the Missouri Class, the North Carolina

Class, the New Jersey Class, the New York Class, the Ohio Class, the Oregon Class, the Pennsylvania Class, the Utah Class, and the Washington Class are referred to collectively as the "State Classes."

96.     Excluded from the Class are the Defendants, the officers and directors of the Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

97.     The Class is so numerous that joinder of all members is impractical. Although Plaintiffs do not yet know the exact size of the Class or State Classes, the DeVry graduates graduated from DeVry programs throughout the United States, live throughout the United States, and on information and belief, members of the Class number in the hundreds of thousands.

98.     The Class is ascertainable because their members can be identified by objective criteria and through Defendants' own records. Individual notice can be provided to Class members "who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

99.     There are numerous questions of law and fact common to the Class which predominate over any individual actions or issues, including but not limited to whether the labeling and marketing of the benefits of a DeVry degree were false and misleading.

100.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct. Plaintiffs have no interests antagonistic to the interests of the other members of the Class. Plaintiffs and all members of the Class have sustained economic injury arising out of Defendants' violations of common and statutory law as alleged herein.

101.    Plaintiffs are adequate representatives of the Class because their interests do not

conflict with the interests of the Class members they seek to represent, they have retained counsel that is competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiffs and their counsel.

102.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims are consistently adjudicated.

## CONCEALMENT OF UNLAWFUL CONDUCT AND EQUITABLE TOLLING

103.    Plaintiffs disclaim any burden to plead facts regarding the statute of limitations. By its very nature, as alleged herein, Defendants' unlawful activity was self-concealing. By Defendants' affirmative acts, misrepresentations, and nondisclosures, any applicable statute of limitations on claims asserted by Plaintiffs and members of the Class have been and are tolled.

104.    Further, Defendants routinely updated their false and misleading representations, sometimes adjusting them one way or another slightly so as to make it appear that their representation was, in fact, valid. These actions continued the conduct complained of until

sometime following the filing of the lawsuit by the FTC discussed *supra*.

105.    Plaintiffs and members of the Class had no knowledge of the unlawful conduct alleged in this Complaint, or of any facts that could or would have led to the discovery thereof, until at least January 2016.  In the exercise of reasonable diligence, Plaintiffs could not have discovered Defendants' violations of law such that suit could be brought before January 2016.

**FIRST CLAIM FOR RELIEF**
**(Illinois Consumer Fraud and Deceptive Business Practices Act,**
**815 ILCS 505/1 *et seq.*)**
**(By All Plaintiffs on Behalf of the Nationwide Class)**

106.    Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein. Plaintiffs bring this Count individually and on behalf of the members of the Nationwide Class.

107.    This cause of action is brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA").  The express purpose of the ICFA is to "protect consumers" "against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . ." 815 ILCS 505/1.

108.    Plaintiffs and Nationwide Class members are "consumers" within the meaning of 815 ILCS 505/1(e) or otherwise sufficiently implicate consumer protection concerns under the ICFA

109.    Defendant was engaged in "trade or commerce" as defined by 815 ILCS 505/1(f).

110.    815 ILCS 505/2 declares unlawful "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omissions of such material fact. . . in the conduct of any trade or commerce."

24

111.    815 ILCS 505/2 also states that "consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act."  Defendants' unfair and deceptive practices are likely to mislead – and have mislead – the consumer acting reasonably in the circumstances, and violate 815 ILCS 505/2 and 21 U.S.C. §352.

112.    Additionally, the Illinois Private Business and Vocational Schools Act of 2012 makes it a violation of the ICFA to violate ILCS 105 ILCS 426/85(k), namely "False or misleading statements, misrepresentations, or false promises that have the tendency or capacity to influence or induce persons to enroll in the program of study offered by the school."  815 ILCS 505/2MMM.

113.    Defendants have violated the ICFA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

114.    Plaintiffs and the Nationwide Class have been aggrieved by Defendants' unfair and deceptive practices in that they purchased Defendants' educational services, which they would not have purchased or would not have paid as much for had they known the true facts.

115.    The damages suffered by Plaintiffs and the Nationwide Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendants, as more fully described herein.

116.    Plaintiffs' actions were akin to consumer actions insofar as Plaintiffs saw Defendants' advertisements and accepted Defendants' "90%" representation as it personally concerned them.

117.    Defendants' "90%" representation involved consumer protection concerns

25

because Defendants made the "90%" representation specifically for the purposes of inducing

enrollment and/or appearing to be a more desirable educational institution. Further, Defendants'

"90%" representation was specifically used for marketing purposes and to increase profits.

118. Plaintiffs' relief would serve the public interest by protecting Class members and

future prospective students from Defendants' conduct, by enjoining Defendants from their

deceptive marketing practices, and by discouraging other for-profit educational institutions from

making false and misleading representations regarding the job placement rates for their

graduates.

119. Pursuant to 815 ILCS 505/10a, Plaintiffs and the Nationwide Class seek a court

order enjoining the above-described wrongful acts and practices of Defendant and for restitution

and disgorgement.

120. Additionally, pursuant to 815 ILCS 505/10a, Plaintiffs and the Nationwide Class

make claims for economic damages, punitive damages, and attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
### (Illinois Private Business and Vocational Schools Act of 2012, 105 ILCS 426/5 *et seq.*)
### (By All Plaintiffs on Behalf of the Nationwide Class)

121. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set

forth herein. Plaintiffs bring this Count individually and on behalf of the members of the

Nationwide Class.

122. This cause of action is brought pursuant to the Illinois Private Business and

Vocational Schools Act of 2012, 105 ILCS 426/5 *et seq.* ("IPBVSA"). The express purpose of

the IPBVSA is "to provide for the protection, education, and welfare of the citizens of this State;

to provide for the education, protection, and welfare of the students of its private business and

vocational schools; and to facilitate and promote quality education and responsible, ethical,

business practices in each of the private business and vocational schools enrolling students in this State." 105 ILCS 426/5.

123. Defendants are "private businesses and vocational schools" under the meaning of the IPBVSA. 105 ILCS 426/15.

124. Defendants have made "false or misleading statements, misrepresentations, or false promises that have the tendency or capacity to influence or induce persons to enroll in the program of study offered by the school" as described *supra*. 105 ILCS 426/85(k)(1).

125. Plaintiffs and members of the Nationwide Class have suffered damages as a result of Defendants' violations of 105 ILCS 426/85(k). As a result, Plaintiffs and the Nationwide Class seek actual damages, treble actual damages, injunctive relief, reasonable attorney's fees, and costs. 105 ILCS 426/85(m).

**THIRD CLAIM FOR RELIEF**
**(Arizona Consumer Fraud Act, Ariz. Revised Stat. §§44-1521 *et. seq*.)**
**(By Plaintiffs Debbie Petrizzo and Jorge Munoz On Behalf of the Arizona Class)**

126. Plaintiffs Debbie Petrizzo and Jorge Munoz repeat and re-allege the allegations contained above, as if set forth fully herein.

127. Plaintiffs Debbie Petrizzo and Jorge Munoz bring this claim individually and on behalf of the Arizona Class.

128. Pursuant to Section 44-1522, Ariz. Rev. Stat., it is unlawful to engage in false, misleading or deceptive acts or practices in connection with the sale or advertisement of any merchandise.

129. Section 44-1521 defines "merchandise" as "any objects, wares, goods, commodities, intangibles, real estate or services . . . ."

130. Plaintiffs is a consumer within the meaning of the Act.

131.    Defendant's educational services are merchandise as defined within the scope of the Act.

132.    Defendant has engaged in deceptive or unfair acts or practices in violation of the ACFA by engaging in the acts and practices above, specifically the "90%" representation.

133.    Plaintiffs Debbie Petrizzo and Jorge Munoz relied on Defendants' deceptive representations in their purchases of Defendants' educational services, including the belief that 90% of all DeVry graduates found jobs within their chosen field of study within six months of graduation.

134.    Plaintiffs Debbie Petrizzo and Jorge Munoz and members of the Arizona Class are entitled to damages including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendant as a result of such business acts or practices.

### FOURTH CLAIM FOR RELIEF
**(California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*)**
**(By Plaintiffs Jorge Rivas, Steven Nickens, Steven Diaz, and Robyn Petersen on Behalf of the California Class)**

135.    Plaintiffs Jorge Rivas, Steven Nickens, Steven Diaz, and Robyn Petersen on behalf of themselves and the California Class, repeat and reassert each of the allegations contained above as if fully set forth herein.

136.    The Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* (the "UCL"), prohibits any "unlawful," "unfair," or "fraudulent" business act or practice and any false or misleading advertising.

137.    In the course of conducting its business, Defendants committed unlawful business practices by, *inter alia*, making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts, as set forth more fully herein, and violating

Cal. Civil Code §§ 1750, *et seq.*, and the common law.

138.    Plaintiffs Jorge Rivas, Steven Nickens, Steven Diaz, and Robyn Petersen, individually and on behalf of other California Class members, reserve the right to allege other violations of law which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

139.    Defendants' actions constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendants engaged in deceptive and false advertising, and misrepresented and omitted material facts regarding its educational services, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and/or unscrupulous activities that are substantially injurious to consumers.  This conduct constitutes violations of the unfair prong of Business & Professions Code §§ 17200, *et seq.*

140.    The California Business & Professions Code §§ 17200, *et seq.*, also prohibits any "fraudulent business act or practice."

141.    Defendants' actions, claims, nondisclosures, and misleading statements, as alleged in this Complaint, also constitute "fraudulent" business practices in violation of the UCL because, among other things, they are false, misleading, and/or likely to deceive reasonable consumers within the meaning of Business & Professions Code §§ 17200, *et seq.*

142.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

143.    As a result of Defendants' pervasive false marketing, including deceptive and misleading acts and omissions as detailed in this Complaint, Plaintiffs Jorge Rivas, Steven Nickens, Steven Diaz and Robyn Petersen and other members of the California Class have in fact been harmed as described above.  If Defendants had not misrepresented their educational

services as being more likely than they were to lead to a job in Plaintiffs Jorge Rivas, Steven Nickens, Steven Diaz and Robyn Petersen's and Class Members' chosen fields, Plaintiffs Jorge Rivas, Steven Nickens, Steven Diaz and Robyn Petersen would not have purchased Defendants' educational services or would not have paid as much for them as they did.

144.     As a result of Defendants' unlawful, unfair, and fraudulent practices, Plaintiffs Jorge Rivas, Steven Nickens, Steven Diaz, and Robyn Petersen and the other California Class members have suffered injury in fact and lost money.

145.     As a result of their deception, Defendants have been able to reap unjust revenue and profit in violation of the UCL.

146.     Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct.   Accordingly, injunctive relief is appropriate for Plaintiffs Jorge Rivas, Steven Nickens, Steven Diaz, and Robyn Petersen and the California Class.

147.     As a result of Defendants' conduct in violation of the UCL, Plaintiffs Jorge Rivas, Steven Nickens, Steven Diaz and Robyn Petersen and members of the California Class have been injured as alleged herein in amounts to be proven at trial because they purchased the educational services without full disclosure of the material facts discussed above.

148.     As a result, Plaintiffs Jorge Rivas, Steven Nickens, Steven Diaz and Robyn Petersen individually, and on behalf of the California Class, and the general public, seek restitution and disgorgement of all money obtained from Plaintiffs Jorge Rivas, Steven Nickens, Steven Diaz, and Robyn Petersen and the members of the California Class collected by Defendant as a result of unlawful, unfair, and/or fraudulent conduct, and seeks injunctive relief, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

## FIFTH CLAIM FOR RELIEF
### (California Consumer Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.*)
### (By Plaintiffs Jorge Rivas and Steven Nickens on Behalf of the California Class)

149. Plaintiffs Jorge Rivas and Steven Nickens on behalf of themselves and the California Class, repeat and reassert each of the allegations contained above as if fully set forth herein.

150. This cause of action is brought pursuant to the California Consumer Legal Remedies Act (the "CLRA"). Plaintiffs Jorge Rivas and Steven Nickens are consumers as defined by California Civil Code § 1761(d). The affected products are goods within the meaning of the CLRA.

151. Defendants violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiffs Jorge Rivas and Steven Nickens and the California Class which were intended to result in, and did result in, the sale of the educational services in question:

a) Representing that . . . the services have . . . characteristics, . . . uses [or] benefits . . . which they do not have;

b) Representing that. . .the services are of a particular standard, quality, or grade . . . if they are of another; and

c) Advertising services . . . with intent not to sell them as advertised.

152. Defendants violated the CLRA by marketing and advertising the educational services in question in the manner described herein, when they knew, or should have known, that the labeling and advertisements were deceptive, false and misleading.

153. Defendants were in a position to know, both from their own knowledge and from outside sources that the "90%" representation was false and misleading.

154.    Defendants intended that Plaintiffs Jorge Rivas and Steven Nickens and members of the California Class would rely on the false and misleading representations, and any reasonable consumer would deem the false and misleading representations material to the purchase of the services.

155.    California Civil Code §1780(a)(2) permits any court of competent jurisdiction to enjoin practices that violate California Civil Code § 1770.

156.    On October 28, 2016, Plaintiffs Jorge Rivas and Steven Nickens sent to Defendants a letter demanding that Defendant rectify the problems listed herein.  Defendants failed to rectify or agree to rectify the problems associated with the actions detailed above and/or failed to give notice to all affected consumers within thirty (30) days of the written notice pursuant to section 1782 of the CLRA, and so Plaintiffs Jorge Rivas and Steven Nickens further seek to recover actual or statutory compensatory/monetary damages as authorized by California Civil Code section 1780(a)(1), restitution as applicable and authorized under California Civil Code section 1780(a)(3), and punitive damages as authorized by California Civil Code section 1780(a)(4), which are appropriate in this case in light of Defendant's knowing, intentional, fraudulent and unconscionable conduct, Defendants' reckless disregard of its legal obligations to Plaintiffs Jorge Rivas and Steven Nickens and the members of California Class, and/or as otherwise recoverable under California Civil Code section 1780(a)(4).  A copy of the letter is attached hereto as Exhibit A.

## SIXTH CLAIM FOR RELIEF
### (Violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*)
### (By Plaintiff Melissa Lotzman On Behalf of the Colorado Class)

157.    Plaintiff Melissa Lotzman on behalf of herself and the Colorado Class, repeat and reassert each of the allegations contained above as if fully set forth herein.

158.     Chapter 6-1-101 of the Colorado Consumer Protection Act ("CCPA") generally governs deceptive trade practices within the State of Colorado.  Colo. Rev. Stat. § 6-1-105.

159.     The CCPA governs trade practices affecting the sale of goods, services, or property.  Colo. Rev. Stat. § 6-1-105.

160.     The CCPA outlaws "mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of . . . services. . ."  Colo. Rev. Stat. § 6-1-105.

161.     The CCPA also outlaws "[f]ail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction."  Colo. Rev. Stat. § 6-1-105.

162.     Plaintiff Melissa Lotzman is a consumer within the meaning of the CCPA.

163.     Defendants' false and misleading representations complained of herein are "trade practices" within the meaning of the CCPA.

164.     In the course of business, Defendants actively misrepresented the actual likelihood of being able to find a job and job placement rates in their graduates' chosen field within six months of graduation.  Through this misrepresentation, Defendants deprived Plaintiff Melissa Lotzman and Colorado Class members of material facts regarding the value of a degree from DVU.  Moreover, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices and/or concealment, suppression or omission of material facts with intent that others rely upon such concealment or misstatement in connection with the sale of its educational services.

165.     Further, Defendants failed to disclose that their advertisements were based upon

33

knowingly false figures which were shown in their advertisements with an intent to induce consumers to enroll at DVU.

166.    Defendants' actions as set forth above occurred in the conduct of trade or commerce. Defendants were and are engaged in the sale of educational services on a for-profit basis within the State of Colorado.

167.    By failing to disclose the actual percentage of DVU graduates employed in their chosen field within six months of graduation and by marketing DVU degrees as highly likely to lead to obtaining a job within six months of graduation, Defendants have engaged in unfair or deceptive business practices in violation of the CCPA.

168.    Defendants' unfair or deceptive acts or practices, including the "90%" representation, willfully concealed or actively intended to mislead consumers, tended to create a false impression in potential and actual consumers of Defendants' educational services, and in fact did deceive reasonable consumers, including Plaintiff Melissa Lotzman and members of the Colorado Class about the true value of a DVU degree.

169.    Defendants knew or should have known that the "90%" representation was false and misleading.

170.    Defendants' misrepresentation regarding their actual job acquisition rates for students within six months of graduation made their degrees less valuable than if the "90%" representation had been accurate.

171.    Plaintiff Melissa Lotzman and members of the Colorado Class suffered an ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the actual job placement rates for graduates of DVU, Plaintiff Melissa Lotzman and members of the Colorado Class would not have enrolled at DVU

or would have paid less for DVU's educational services. Plaintiff Melissa Lotzman and members of the Colorado Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

172.     Defendants' unlawful acts and practices complained of herein affect the public interest.

173.     As a direct and proximate result of Defendants' violations of the CCPA, Plaintiff Melissa Lotzman and the Colorado Class have suffered injury-in-fact and/or actual damage.

174.     Defendants' conduct was knowing, willful, and/or intentional, and has caused injury-in-fact to Plaintiff Melissa Lotzman and member of the Colorado Class, and was therefore in "bad faith" under the terms of Colo. Rev. Stat. § 6-1-105.

175.     Defendants are liable to Plaintiff Melissa Lotzman and the Colorado Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under Colo. Rev. Stat. § 6-1-113.

### SEVENTH CLAIM FOR RELIEF
**(Violation of the Florida Deceptive and Unfair Trade Practices Act,**
**Fla. Stat. § 501.201, *et seq*.)**
**(By Plaintiffs Elijah Morgan and Elihu Guiste On Behalf of the Florida Class)**

176.     Plaintiffs Elijah Morgan and Elihu Guiste on behalf of themselves and the Florida Class, repeat and reassert each of the allegations contained above as if fully set forth herein.

177.     Chapter 501 of the Florida Annotated Statutes generally governs consumer protection within the State of Florida (the "FDUTPA"). Fla. Stat. § 501.201, *et seq*.

178.     Under the FDUTPA, "trade or commerce" means "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of

value, wherever situated." Fla. Stat. § 501.203(8).

179.    Under the FDUTPA, "thing of value" includes, without limitation "any moneys, donation, membership, credential, certificate, prize, award, benefit, license, interest, professional opportunity, or chance of winning." Fla. Stat. § 501.203(9).

180.    The FDUTPA outlaws "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

181.    Defendants' educational services and degrees are "services" or "things of value" within the meaning of the FDUTPA.

182.    Defendants' failure to disclose and active concealment of the benefits of their educational services and degrees was material to Plaintiff Elijah Morgan and Elihu Guiste the Florida Class.

183.    Defendants' unfair or deceptive acts or practices, including the "90%" representation, had a tendency or capacity to mislead, tended to create a false impression in potential and actual consumers of educational services, and were likely to and in fact did deceive reasonable consumers, including Plaintiffs Elijah Morgan and Elihu Guiste and members of the Florida Class about the true value of a DVU degree.

184.    Defendants knew or should have known that the "90%" representation was false and misleading.

185.    Defendants' misrepresentation regarding their actual job acquisition rates for students within six months of graduation made their DeVry educations and degrees less valuable than if the "90%" representation had been accurate.

186.    Plaintiffs Elijah Morgan and Elihu Guiste and Florida Class members' loss was

caused by Defendants' willful misrepresentation regarding their job acquisition statistics.

187.     Plaintiffs Elijah Morgan and Elihu Guiste and members of the Florida Class suffered actual damages caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the actual job placement rates for DVU graduates, Plaintiffs Elijah Morgan and Elihu Guiste and members of the Florida Class would not have enrolled at DVU or would have paid less for DVU's educational services.

188.     As a direct and proximate result of Defendants' violations of the FUDTPA, Plaintiffs and the Florida Class have suffered actual damages.

### EIGHTH CLAIM FOR RELIEF
**(Violation of the Georgia Fair Business Practices Act, O.G.C.A. 10-1-390, *et seq.*)**
**(By Plaintiffs Mariel Jennings, DeLeon McKee, Cedric Holloway, and Ethel Holloway)**

189.     Plaintiffs Mariel Jennings, DeLeon McKee, Cedric Holloway and Ethel Holloway on behalf of themselves, repeat and reassert each of the allegations contained above as if fully set forth herein.

190.     This cause of action is brought pursuant to the Georgia Fair Business Practices Act ("GFBPA"), O.G.C.A. 10-1-390 *et seq.*  Plaintiffs Mariel Jennings, DeLeon McKee, Cedric Holloway and Ethel Holloway are consumers as defined by O.G.C.A. § 10-1-392(6).

191.     Defendants violated and continue to violate the GFBPA by engaging in the following practices proscribed by O.G.C.A. §10-1-393(b) in transactions with Plaintiffs Mariel Jennings, DeLeon McKee, Cedric Holloway and Ethel Holloway which were intended to result in, and did result in, the sale of the educational services in question:

(5)     Representing that. . .the services have . . . characteristics, . . . uses [or] benefits . . . which they do not have;

(7)     Representing that. . .the services are of a particular standard, quality, or grade . . .

if they are of another; and

(9)     Advertising services . . . with intent not to sell them as advertised.

192.     Defendants violated the GFBPA by marketing and advertising the educational services in question in the manner described herein, when they knew, or should have known, that the labeling and advertisements were deceptive, false and misleading.

193.     Defendants were in a position to know, both from their own knowledge and from outside sources that the "90%" representation was false and misleading.

194.     Defendants intended that Plaintiffs Mariel Jennings, DeLeon McKee, Cedric Holloway and Ethel Holloway would rely on the false and misleading representations, and any reasonable consumer would deem the false and misleading representations material to the purchase of the services.

195.     On October 14, 2016, Plaintiffs Jennings and McKee sent Defendants a letter demanding that Defendant rectify the problems listed herein.  Defendants failed to rectify or agree to rectify the problems associated with the actions detailed within thirty (30) days of the written notice pursuant to section 10-1-399(b) of the OGCA, and so Plaintiffs seek to recover actual or statutory compensatory/monetary damages as authorized by O.G.C.A. section 10-1-399, including reasonable attorneys' fees and expenses of litigation.

196.     On October 18, 2016, Plaintiffs C. Holloway and E. Holloway sent Defendants a letter demanding that Defendant rectify the problems listed herein.  Defendants failed to rectify or agree to rectify the problems associated with the actions detailed within thirty (30) days of the written notice pursuant to section 10-1-399(b) of the OGCA, and so Plaintiffs seek to recover actual or statutory compensatory/monetary damages as authorized by O.G.C.A. section 10-1-399, including reasonable attorneys' fees and expenses of litigation.

197.     Copies of the letters are attached hereto as Exhibits B and C, respectively.

## NINTH CLAIM FOR RELIEF
**(Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*)**
**(In the Alternative, By Plaintiffs David Viglielmo, Annette Pearson and Derek Villa on Behalf of the Illinois Class)**

198.     Plaintiffs David Viglielmo, Annette Pearson and Derek Villa repeat the allegations contained in the paragraphs above as if fully set forth herein.  Plaintiffs bring this Count individually and on behalf of the members of the Illinois Class.

199.     This cause of action is brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA").  The express purpose of the ICFA is to "protect consumers" "against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." 815 ILCS 505/1.

200.     Plaintiffs David Viglielmo, Annette Pearson and Derek Villa and Illinois Class members are "consumers" within the meaning of 815 ILCS 505/1(e) or otherwise sufficiently implicate consumer protection concerns under the ICFA

201.     Defendants were engaged in "trade or commerce" as defined by 815 ILCS 505/1(f).

202.     815 ILCS 505/2 declares unlawful "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omissions of such material fact . . . in the conduct of any trade or commerce."

203.     815 ILCS 505/2 also states that "consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act."  Defendants' unfair and deceptive practices are likely to mislead – and

have mislead – the consumer acting reasonably in the circumstances, and violate 815 ILCS 505/2 and 21 U.S.C. § 352.

204.    Additionally, the Illinois Private Business and Vocational Schools Act of 2012 makes it a violation of the ICFA to violate ILCS 105 ILCS 426/85(k), namely "False or misleading statements, misrepresentations, or false promises that have the tendency or capacity to influence or induce persons to enroll in the program of study offered by the school." 815 ILCS 505/2MMM.

205.    Defendants have violated the ICFA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

206.    Defendants' misrepresentation regarding their actual job acquisition rates for students within six months of graduation made their DeVry educations and degrees less valuable than if the "90%" representation had been accurate.

207.    Plaintiffs David Viglielmo, Annette Pearson and Derek Villa and the Illinois Class have been aggrieved by Defendants' unfair and deceptive practices in that they purchased Defendants' educational services, which they would not have purchased or would not have paid as much for had they known the true facts.

208.    The damages suffered by Plaintiffs David Viglielmo, Annette Pearson and Derek Villa and the Illinois Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendants, as more fully described herein.

209.    Plaintiffs David Viglielmo, Annette Pearson and Derek Villa's actions were akin to consumer actions insofar as Plaintiffs David Viglielmo, Annette Pearson, and Derek Villa saw Defendants' advertisements and accepted Defendants' "90%" representation as it influenced

their decisions to attend DVU.

210.    Defendants' "90%" representation involved consumer protection concerns because Defendants made the "90%" representation specifically for the purposes of inducing enrollment and/or appearing to be a more desirable educational institution. Further, Defendants' "90%" representation was specifically used for marketing purposes and to increase their enrollment and profits.

211.    Plaintiffs David Viglielmo, Annette Pearson and Derek Villa's requested relief would serve the public interest by protecting Class members and future prospective students from Defendants' conduct by enjoining Defendants from their deceptive marketing practices and by discouraging other for-profit educational institutions from making false and misleading representations regarding the acquisition of jobs for their graduates.

212.    Pursuant to 815 ILCS 505/10a, Plaintiffs David Viglielmo, Annette Pearson and Derek Villa and the Illinois Class seek a court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

213.    Additionally, pursuant to 815 ILCS 505/10a, Plaintiffs David Viglielmo, Annette Pearson and Derek Villa and the Illinois Class make claims for economic damages, punitive damages, and attorneys' fees and costs.

214.    As required by 815 ILCS 505/10a(d), notice of this action will be mailed to the Illinois Attorney General upon filing.

### TENTH CLAIM FOR RELIEF
**(Illinois Private Business and Vocational Schools Act of 2012, 105 ILCS 426/5 *et seq.*)**
**(In the Alternative, By Plaintiffs David Viglielmo, Annette Pearson**
**and Derek Villa on Behalf of the Illinois Class)**

215.    Plaintiffs David Viglielmo, Annette Pearson and Derek Villa repeat the allegations contained in the paragraphs above as if fully set forth herein. Plaintiffs bring this

Count individually and on behalf of the members of the Illinois Class.

216.    This cause of action is brought pursuant to the Illinois Private Business and Vocational Schools Act of 2012, 105 ILCS 426/5 *et seq.* ("IPBVSA").  The express purpose of the IPBVSA is "to provide for the protection, education, and welfare of the citizens of this State; to provide for the education, protection, and welfare of the students of its private business and vocational schools; and to facilitate and promote quality education and responsible, ethical, business practices in each of the private business and vocational schools enrolling students in this State."  105 ILCS 426/5.

217.    Defendants are "private businesses and vocational schools" under the meaning of the IPBVSA.  105 ILCS 426/15.

218.    Defendants have made "false or misleading statements, misrepresentations, or false promises that have the tendency or capacity to influence or induce persons to enroll in the program of study offered by the school" as described *supra*.  105 ILCS 426/85(k)(1).

219.    Plaintiffs David Viglielmo, Annette Pearson and Derek Villa and members of the Illinois Class have suffered damages as a result of Defendants' violations of 105 ILCS 426/85(k).  As a result, Plaintiffs and the Nationwide Class seek actual damages, treble actual damages, injunctive relief, reasonable attorney's fees, and costs.  105 ILCS 426/85(m).

## ELEVENTH CLAIM FOR RELIEF
### (Violation of the Kansas Consumer Protection Act, Kan. Ann. Stat. § 50-623, *et seq.*)
### (By Plaintiff Cheryl Costello On Behalf of the Kansas Class)

220.    Plaintiff Cheryl Costello on behalf of herself and the Kansas Class, repeats and reasserts each of the allegations contained above as if fully set forth herein.

221.    Chapter 50 of the Kansas Annotated Statutes generally governs consumer protection within the State of Kansas (the "KCPA").  Kan. Ann. Stat. § 50-623, *et seq.*

222.    Under the KCPA, "consumer transaction" means "means a sale, lease, assignment or other disposition for value of property or services within this state . . . to a consumer; or a solicitation by a supplier with respect to any of these dispositions."  Kan. Ann. Stat. § 50-624(c).

223.    Under the KCPA, "supplier" means "manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer."  Kan. Ann. Stat. § 50-624(l).

224.    The KCPA outlaws "deceptive acts", which include "the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact" and "the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact."  Kan. Ann. Stat. § 50-626(b).

225.    Plaintiff Cheryl Costello is a consumer within the meaning of the KCPA.

226.    Defendants are "suppliers" within the meaning of the KCPA.

227.    Defendants' educational services are "services" within the meaning of the KCPA.

228.    The KCPA outlaws "unconscionable acts", which include acts in which "[t]he supplier took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor;" "the consumer was unable to receive a material benefit from the subject of the transaction;" "the transaction the supplier induced the consumer to enter into was excessively one sided in favor of the supplier;" and "the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment."  Kan. Ann. Stat. § 50-627(b).

229.    In the course of business, Defendants willfully misrepresented the actual

likelihood of being able to find a job in their graduates' chosen field within six months of graduation. Through this misrepresentation, Defendants deceived Plaintiff Cheryl Costello and Kansas Class members with respect to material facts regarding the value of a degree from DVU. Further, Defendants have engaged in trade practices with a tendency or capacity to deceive. Moreover, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices and/or concealment, suppression or omission of any material fact with intent that others rely to their detriment upon such concealment or misstatement in connection with the sale of its educational services.

230. Further, Defendants, in the course of advertising and selling educational services, Defendants took advantage of Plaintiff Cheryl Costello and Kansas Class members' lack of knowledge and/or understanding of Defendants' actual employment figures.

231. Defendants' actions were excessively one-sided in favor of Defendants.

232. Defendants also induced Plaintiff Cheryl Costello and Kansas Class members to enter in to a commercial transaction from which they did not derive the promised benefits, and did so through concealment of and/or deception as to material facts regarding the likelihood of DVU graduates of being able to find jobs in their chosen fields within six months of graduation.

233. Defendants' misrepresentation regarding their actual job acquisition rates for students within six months of graduation made their degrees less valuable than if the "90%" representation had been accurate.

234. Defendants' unfair or deceptive acts or practices, including the "90%" representation, had a tendency or capacity to mislead, tended to create a false impression in potential and actual consumers of educational services, and were likely to and in fact did deceive reasonable consumers, including Plaintiff Cheryl Costello and members of the Kansas Class

about the true value of a DVU degree.

235.    Defendants knew or should have known that the "90%" representation was false and misleading.

236.    Defendants' failure to disclose their actual job acquisition rates within six months of employment made their degrees less valuable than a degree from an institution which, in fact, could legitimately and accurately represent that 90% of its graduates were employed within their chosen field of study within six months of graduation.

237.    Plaintiff Cheryl Costello and members of the Kansas Class suffered an ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the actual job acquisition numbers for degrees conferred by DVU, Plaintiff Cheryl Costello and members of the Kansas Class would not have enrolled at DVU or would have paid less for DVU's educational services.  Plaintiff Cheryl Costello and members of the Kansas Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

238.    Defendants' unlawful acts and practices complained of herein affect the public interest.

239.    As a direct and proximate result of Defendants' violations of the KCPA, Plaintiff Cheryl Costello and the Kansas Class have suffered injury-in-fact and/or actual damage.

240.    Defendants are liable to Plaintiff Cheryl Costello and the Kansas Class for damages in amounts to be proven at trial, including reasonable attorneys' fees, and costs, as well as injunctive and appropriate ancillary relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under Kan. Ann. Stat. § 50-634.

**TWELFTH CLAIM FOR RELIEF**
**(Violation of the Maryland Consumer Protection Act,**
**Md. Commercial Law Code Ann. § 13-101, *et seq*.)**
**(By Plaintiff Steven Nickens On Behalf of the Maryland Class)**

241.   Plaintiff Steven Nickens on behalf of himself and the Maryland Class, repeats and reasserts each of the allegations contained above as if fully set forth herein.

242.   Chapter 13-101 *et seq.* of the Maryland Consumer Protection Act ("MCPA") generally governs deceptive trade practices within the State of Maryland.

243.   The CCPA governs trade practices affecting the sale of consumer goods and consumer services.  Md. Commercial Law Code Ann. § 13-101.

244.   The CCPA outlaws "[f]alse, falsely disparaging, or misleading oral or written statement[s], visual description, or other representation[s] of any kind which ha[ve] the capacity, tendency, or effect of deceiving or misleading consumers."  Md. Commercial Law Code Ann. § 13-301.

245.   The CCPA also outlaws "any unfair or deceptive trade practice" in "[t]he offer for sale of course credit or other educational services."  Md. Commercial Law Code Ann. § 13-303.

246.   Plaintiff Steven Nickens is a consumer within the meaning of the MCPA.

247.   Defendants' educational services are "consumer services" and "educational services" within the meaning of the CCPA.

248.   In the course of business, Defendants actively misrepresented the actual likelihood of being able to find a job in their graduates' chosen field within six months of graduation.  Through this misrepresentation, Defendants deprived Plaintiff Steven Nickens and Maryland Class members of material facts regarding the value of a degree from DVU.  Moreover, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices and/or concealment, suppression or

46

omission of any material fact with intent that others rely upon such concealment or misstatement in connection with the sale of its educational services.

249. Further, Defendants failed to disclose that their advertisements were based upon knowingly false figures which were shown in their advertisements with an intent to induce consumers to enroll at DVU.

250. Defendants' actions as set forth above occurred in the conduct of trade or commerce. Defendants were and are engaged in the sale of educational services on a for-profit basis within the State of Maryland.

251. By failing to disclose the actual percentage of DVU graduates employed in their chosen field within six months of graduation and by marketing DVU degrees as highly likely to lead to obtaining a job in their chosen field within six months of graduation, Defendants have engaged in unfair or deceptive business practices in violation of the MCPA.

252. Defendants' unfair or deceptive acts or practices, including the "90%" representation, willfully concealed or actively intended to mislead consumers, tended to create a false impression in potential and actual consumers of educational services, and in fact did deceive reasonable consumers, including Plaintiff Steven Nickens and members of the Maryland Class about the true value of a DVU degree.

253. Defendants knew or should have known that the "90%" representation was false and misleading.

254. Defendants' misrepresentation regarding their actual job acquisition rates for students within six months of graduation made their degrees less valuable than if the "90%" representation had been accurate.

255. Plaintiff and members of the Maryland Class suffered an identifiable loss caused

by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the actual job acquisition numbers for degrees conferred by DVU, Plaintiff Steven Nickens and members of the Maryland Class would not have enrolled at DVU or would have paid less for Defendants' services.

256.     Defendants' unlawful acts and practices complained of herein affect the public interest.

257.     As a direct and proximate result of Defendants' violations of the MCPA, Plaintiff Steven Nickens and the Maryland Class have suffered injury-in-fact and/or actual damage.

258.     Defendants are liable to Plaintiff Steven Nickens and the Maryland Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under Md. Commercial Law Code Ann. § 13-408.

## THIRTEENTH CLAIM FOR RELIEF
### (Violation of the Missouri Merchandising Practices Act,
### Mo. Ann. Stat. § 407.010, *et seq*.)
### (By Plaintiffs Renee Heather Polly, Brandy Van Buren, Ashley Dellen, Eric Stone, Josh Ablian, Stephanie Cumpton, Christopher Condie, Denisse Perez, Heather Anderson, Rhonda Garrison and Lynda Crilley On Behalf of the Missouri Class)

259.     Plaintiffs Renee Heather Polly, Brandy Van Buren, Ashley Dellen, Eric Stone, Josh Ablian, Stephanie Cumpton, Christopher Condie, Denisse Perez, Heather Anderson, Rhonda Garrison and Lynda Crilley (referred to collectively as the "Missouri Plaintiffs") on behalf of themselves and the Missouri Class, repeat and reassert each of the allegations contained above as if fully set forth herein.

260.     Chapter 407 of the Missouri Merchandising Practices Act (the "MMPA") generally governs unlawful business practices and the sale of advertisement of merchandise within the State of Missouri. Mo. Ann. Stat. § 407.020.

261.    Under the MMPA, "merchandise" means "any objects, wares, goods, commodities, intangibles, real estate or services." Mo. Ann. Stat. § 407.010(4).

262.    The MMPA outlaws "act[s], use[s] or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Ann. Stat. § 407.020.

263.    In the course of business, Defendants actively misrepresented the actual likelihood of being able to find a job in their graduates' chosen field within six months of graduation. Through this misrepresentation, Defendants deprived the Missouri Plaintiffs and Missouri Class members of material facts regarding the value of a degree from DVU. Further, Defendants have engaged in trade practices with a tendency or capacity to deceive. Moreover, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices and/or concealment, suppression or omission of any material fact with intent that others rely upon such concealment or misstatement in connection with the sale of its educational services.

264.    Defendants' misrepresentation regarding their actual job acquisition rates for students within six months of graduation made their degrees less valuable than if the "90%" representation had been accurate.

265.    Defendants' unfair or deceptive acts or practices, including the "90%" representation, had a tendency or capacity to mislead, tended to create a false impression in potential and actual consumers of educational services, and were likely to and in fact did deceive reasonable consumers, including the Missouri Plaintiffs and members of the Missouri Class about the true value of a DVU degree.

266.     Defendants knew or should have known that the "90%" representation was false and misleading.

267.     The Missouri Plaintiffs and members of the Missouri Class suffered an ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the actual job acquisition numbers for degrees conferred by DVU, the Missouri Plaintiffs and members of the Missouri Class would not have enrolled at DVU or would have paid less for DVU's educational services.  The Missouri Plaintiffs and members of the Missouri Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

268.     Defendants' unlawful acts and practices complained of herein affect the public interest.

269.     As a direct and proximate result of Defendants' violations of the MMPA, The Missouri Plaintiffs and the Missouri Class have suffered injury-in-fact and/or actual damage.

270.     Defendants are liable to the Missouri Plaintiffs and the Missouri Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under Mo. Ann. Stat. § 407.025.

### FOURTEENTH CLAIM FOR RELIEF
**(Violation of the North Carolina Consumer Protection Act, N.C. Gen. Stat. § 75-1, *et seq.*)**
**(By Plaintiffs Darius Bryant, A. Pearson and T. Pearson**
**On Behalf of the North Carolina Class)**

271.     Plaintiffs Darius Bryant, A. Pearson and T. Pearson on behalf of themselves and the North Carolina Class, repeats and reasserts each of the allegations contained above as if fully set forth herein.

272.     Chapter 75, Article 1 of the North Carolina General Statutes generally governs

consumer protection within the State of North Carolina (the "NCCPA"). N.C. Gen. Stat. § 75-1, *et seq.*

273. Under the NCCPA, "commerce" "includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C. Gen. Stat. § 75-1.1(b).

274. The NCCPA outlaws "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(b).

275. In the course of business, Defendants willfully misrepresented the actual likelihood of being able to find a job in their graduates' chosen field within six months of graduation. Through this misrepresentation, Defendants deceived Plaintiffs Darius Bryant, A. Pearson and T. Pearson and the North Carolina Class members with respect to material facts regarding the value of a degree from DVU. Further, Defendants have engaged in trade practices with a tendency or capacity to deceive. Moreover, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices and/or concealment, suppression or omission of any material fact with intent that others rely to their detriment upon such concealment or misstatement in connection with the sale of its educational services.

276. Defendants' misrepresentation regarding their actual job acquisition rates for students within six months of graduation made their degrees less valuable than if the "90%" representation had been accurate.

277. Defendants' unfair or deceptive acts or practices, including the "90%" representation, had a tendency or capacity to mislead, tended to create a false impression in potential and actual consumers of educational services, and were likely to and in fact did deceive

51

reasonable consumers, including Plaintiffs Darius Bryant, A. Pearson and T. Pearson and members of the North Carolina Class about the true value of a DVU degree.

278.    Defendants knew or should have known that the "90%" representation was false and misleading.

279.    Defendants' conduct was willful.

280.    Defendants maintain two campuses within the State of North Carolina: a Charlotte campus and a Morrisville (Raleigh Durham) campus.    Defendants' conduct substantially affected trade or commerce within the State of North Carolina.

281.    Plaintiffs Darius Bryant, A. Pearson and T. Pearson and members of the North Carolina Class suffered an actual, ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the actual job placement rates for degrees conferred by DVU, Plaintiffs Darius Bryant, A. Pearson and T. Pearson and members of the North Carolina Class would not have enrolled at DVU or would have paid less for DVU's educational services.  Plaintiffs Darius Bryant, A. Pearson and T. Pearson and members of the North Carolina Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

282.    Defendants' unlawful acts and practices complained of herein affect the public interest.

283.    As a direct and proximate result of Defendants' violations of the NCCPA, Plaintiffs Darius Bryant, A. Pearson and T. Pearson and the North Carolina Class have suffered injury-in-fact and/or actual damage.

284.    Defendants are liable to Plaintiffs Darius Bryant, A. Pearson and T. Pearson and the North Carolina Class for damages in amounts to be proven at trial, including treble damages,

and, circumstances permitting, attorneys' fees, as well as injunctive and appropriate ancillary relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under N.C. Gen. Stat. §§ 75-16 and 75-16.1.

## FIFTEENTH CLAIM FOR RELIEF
### (Violation of the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1, *et seq.*)
### (By Plaintiffs Jairo Jara and Kenya Montgomery On Behalf of the New Jersey Class)

285.     Plaintiffs Jairo Jara and Kenya Montgomery on behalf of themselves and the New Jersey Class, repeat and reassert each of the allegations contained above as if fully set forth herein.

286.     Chapter 8, Section 56 of the New Jersey Statutes comprises the New Jersey Consumer Fraud Act (the "NJCFA"), which generally governs unlawful business practices and the sale or advertisement of merchandise within the State of New Jersey.  N.J. Stat. § 56:8.

287.     Under the NJCFA, "merchandise" means "any objects, wares, goods, commodities, services, or anything offered, directly or indirectly, to the public for sale."  N.J. Stat. § 56:8-1(c).

288.     The NJCFA outlaws the "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby."  N.J. Stat. § 56:8-2.

289.     In the course of business, Defendants actively misrepresented the actual likelihood of being able to find a job in their graduates' chosen field within six months of

53

graduation.  Through this misrepresentation, Defendants deprived Plaintiffs Jairo Jara and Kenya Montgomery and New Jersey Class members of material facts regarding the value of a degree from DVU.  Further, Defendants have engaged in trade practices with a tendency or capacity to deceive.  Moreover, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices and/or concealment, suppression or omission of any material fact with intent that others rely upon such concealment or misstatement in connection with the sale of its educational services.

290.    Defendants' misrepresentation regarding their actual job placement rates for students within six months of graduation made their degrees less valuable than if the "90%" representation had been accurate.

291.    Defendants knew or should have known that the "90%" representation was false and misleading.

292.    Defendants' failure to disclose and active concealment of the benefits of their educational services was material to Plaintiff Jairo Jara and Kenya Montgomery and the New Jersey Class.

293.    Plaintiffs and members of the New Jersey Class suffered an ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the actual job acquisition numbers for degrees conferred by DVU, Plaintiffs Jairo Jara and Ken Montgomery and members of the New Jersey Class would not have enrolled at DVU or would have paid less for DVU's services.

294.    As a direct and proximate result of Defendants' violations of the NJCFA, Plaintiffs Jairo Jara and Kenya Montgomery and the New Jersey Class have suffered an ascertainable loss.

295.    Defendants are liable to Plaintiffs Jairo Jara and Kenya Montgomery and the New

Jersey Class for damages in amounts to be proven at trial, including attorneys' fees and costs, as

well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just

and proper relief under N.J. Stat. § 56:8-2.11-2.12 and N.J. Stat. § 4:32-2(h).

### SIXTEENTH CLAIM FOR RELIEF
**(Violation of the New York General Business Law, N.Y. Gen. Bus. Law § 349)**
**(By Plaintiff Julie Ramroop on Behalf of the New York Class)**

296.    Plaintiff Julie Ramroop on behalf of herself and the New York Class, repeats and

reasserts each of the allegations contained above as if fully set forth herein.

297.    Plaintiff Julie Ramroop brings this claim on behalf of the New York Class.

298.    Plaintiffs and the New York Class are "persons," as defined by the New York

General Business Law ("New York GBL"), N.Y. Gen. Bus. Law § 349(h).

299.    Defendants are a "person[s]," "firm[s]," "corporation[s]," or "association[s]," as

defined by the New York GBL, N.Y. Gen. Bus. Law § 349.

300.    The New York GBL makes unlawful "[d]eceptive acts or practices in the conduct

of any business, trade or commerce."  N.Y. Gen. Bus. Law § 349.  Defendants' conduct directed

toward consumers, as described herein, constitutes "deceptive acts or practices" within the

meaning of the New York GBL.

301.    Defendant's actions as set forth above occurred in the conduct of trade or

commerce.

302.    In the course of its business, Defendant intentionally misrepresented the job

placements rates of DVU graduates within six months of graduation, and otherwise engaged in

activities with a tendency or capacity to deceive.

303.    Defendants also engaged in unlawful trade practices by employing deception,

deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of material facts with intent that others rely upon such concealment, suppression or omission, in connection with the sale of educational services.

304.    By failing to disclose and actively concealing the actual job placement rates of its graduates within six months of graduation, Defendants engaged in unfair or deceptive business practices in violation of the New York GBL.   Defendants deliberately misrepresented the information about their job placement rates within six months of graduation in order to induce students to purchase educational services by enrolling at DeVry.

305.    In the course of Defendants' business, they willfully failed to disclose and actively concealed the actual job acquisition figures of DVU graduates within six months of graduation.  Defendants compounded the deception by repeatedly the "90%" representation long after they knew or should have known that their representations were false.

306.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff Julie Ramroop, about the true nature and value of their educational services.

307.    Defendants intentionally and knowingly misrepresented material facts regarding their educational services with intent to mislead Plaintiff Julie Ramroop and the New York Class.

308.    Defendants knew or should have known that their conduct violated the New York GBL.

309.    Defendants owed Plaintiff Julie Ramroop and the New York Class a duty to

disclose the true job placement rates within six months of graduation because Defendants:

      (a)     Possessed exclusive knowledge of actual job placement rates;

      (b)     Intentionally concealed the actual job placement rates from Plaintiff Julie Ramroop and the Class; and

      (c)     Made incomplete representations about their job acquisition rates, while purposefully withholding material facts from Plaintiff Julie Ramroop and the Class that contradicted these representations.

310.    Because Defendants fraudulently concealed the fact that the "90%" representation was false, the value of Defendants' educational services was greatly inflated. In light of the Defendants' conduct, a DVU degree is now worth significantly less than it otherwise would be.

311.    Defendants' failure to disclose and active concealment of the benefits of their educational services was material to Plaintiff Julie Ramroop and the New York Class. Defendants' misrepresentation regarding their actual job placement rates for students within six months of graduation made their degrees less valuable than if the "90%" representation had been accurate.

312.    Plaintiff Julie Ramroop and the New York Class suffered ascertainable losses caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of that the "90%" representation was false and misleading, Plaintiff Julie Ramroop would not have enrolled at DVU or would have paid less for Defendants' services.

313.    Defendants' unlawful acts and practices complained of herein affect the public interest.

314.    As a direct and proximate result of Defendants' violations of the New York GBL, Plaintiff Julie Ramroop and the New York Class have suffered injury-in-fact and/or actual

damage.

315.    Plaintiff Julie Ramroop and the New York Class seek punitive damages against Defendants because Defendants' conduct was egregious.  Defendants directed their "90%" representation toward high school students, including minors, toward current and former service members, and toward the unemployed with the knowledge that this representation was false and would be relied on by those individuals seeking employment during a time of financial crisis and high unemployment rates.  Defendants' egregious conduct warrants punitive damages.

316.    Because Defendants' willful and knowing conduct caused injury to the New York Class, the New York Class seeks recovery of actual damages or $50, whichever is greater, discretionary treble damages, if available, up to $1,000, punitive damages, reasonable attorneys' fees and costs, an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under N.Y. Gen. Bus. Law § 349.

**SEVENTEENTH CLAIM FOR RELIEF**
**(Violation of the New York General Business Law, N.Y. Gen. Bus. Law § 350)**
**(By Plaintiff Julie Ramroop on Behalf of the New York Class)**

317.    Plaintiff Julie Ramroop on behalf of herself and the New York Class, repeats and reasserts each of the allegations contained above as if fully set forth herein.

318.    Plaintiff Julie Ramroop brings this claim on behalf of the New York Class.

319.    Defendants were and are engaged in the "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

320.    N.Y. Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

321.    Defendants caused to be made or disseminated through New York, through advertising, marketing and other publications, statements that were untrue or misleading, and

that were known, or by which the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers and the New York Class.

322.    Defendants have violated New York GBL § 350 because Defendants' "90%" misrepresentation was material and likely to deceive a reasonable consumer.

323.    Members of the New York Class have suffered an injury, including the loss of money or property, as a result of Defendants' false advertising.  In purchasing Defendants' educational services, Plaintiff Julie Ramroop and the New York Class relied on the misrepresentations and/or omissions of Defendants with respect to their ability to find a job in their chosen field within six months of graduation.  Defendants' representations were false and/or misleading because they materially misrepresented Defendants' own internal statistics regarding job acquisition and/or placement within six months of graduation.  Had Plaintiff Julie Ramroop and the New York Class known this, they would not have purchased Defendants' educational services.

324.    Pursuant to N.Y. Gen. Bus. Law § 350-e, the New York Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 each for every New York Class member.  Because Defendants' conduct was committed willfully and knowingly, each New York Class member is entitled to recover three times actual damages, up to $10,000.

325.    The New York Class also seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under N.Y. Gen. Bus. Law § 350.

## EIGHTEENTH CLAIM FOR RELIEF
**(Violation of the Ohio Consumer Sales Practices Act, O.R.C. § 1345.01, *et seq*.)**
**(By Plaintiff Jennifer Wallace, Kirstine Holiness and Lynda Crilley**
**on Behalf of the Ohio Class)**

326.    Plaintiffs Jennifer Wallace, Kirstine Holiness and Lynda Crilley on behalf of themselves and the Ohio Class, repeat and reassert each of the allegations contained above as if fully set forth herein.

327.    Chapter 1345 of the Ohio Revised Code generally governs unlawful sales practices within the State of Ohio (the "OCSPA"). O.R.C. § 1345.01, *et seq.*

328.    Under the OSCPA, a "consumer transaction" means "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things . . . ." O.R.C. § 1345.01(A).

329.    The OSCPA outlaws "unfair or deceptive act[s] or practice[s] in connection with a consumer transaction." O.R.C. § 1345.02(A).

330.    Further, acts or practices that can be unfair or deceptive include consumer transactions which have "sponsorship[s], approval, performance characteristics, accessories, uses, or benefits that [they] do[] not have," or that they are of a "particular standard, quality, grade, style, prescription, or model, if [they are] not." O.R.C. § 1345.02(B).

331.    In the course of business, Defendants actively misrepresented the actual likelihood of being able to find a job in their graduates' chosen field within six months of graduation.  Through this misrepresentation, Defendants deceived Plaintiffs Jennifer Wallace, Kirstine Holiness and Lynda Crilley and the Ohio Class members with respect to material facts

regarding the value of a degree from DVU. Further, Defendants have engaged in trade practices with a tendency or capacity to deceive. Moreover, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices and/or concealment, suppression or omission of any material fact with intent that others rely upon such concealment or misstatement in connection with the sale of its educational services.

332.    Further, Defendants, in the course of advertising and selling educational services, Defendants took advantage of Plaintiffs Jennifer Wallace, Kirstine Holiness and Lynda Crilley and the Ohio Class members' lack of knowledge and/or understanding of Defendants' actual employment figures.

333.    By failing to disclose the actual percentage of DVU graduates employed in their chosen field within six months of graduation and by marketing DVU degrees as highly likely to lead to obtaining a job within six months of graduation, Defendants have engaged in unfair or deceptive business practices in violation of the OCSPA.

334.    Defendants' unfair or deceptive acts or practices, including the "90%" representation, had a tendency or capacity to mislead, tended to create a false impression in potential and actual consumers of educational services, and were likely to and in fact did deceive reasonable consumers, including Plaintiffs Jennifer Wallace, Kirstine Holiness and Lynda Crilley and the members of the Ohio Class about the true value of a DVU degree.

335.    Defendants knew that the "90%" representation was false and misleading.

336.    Plaintiffs Jennifer Wallace, Kirstine Holiness and Lynda Crilley and the members of the Ohio Class suffered an ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the actual job placement

rates for DeVry graduates, Plaintiffs Jennifer Wallace, Kirstine Holiness and Lynda Crilley and the members of the Ohio Class would not have enrolled at DVU or would have paid less for Defendants' services.

337.    As a direct and proximate result of Defendants' violations of the OCSPA, Plaintiffs Jennifer Wallace, Kirstine Holiness and Lynda Crilley and the Ohio Class have suffered injury-in-fact and/or actual damage.

338.    Defendants' acts are sufficiently similar to other actions by which courts have maintained actions under the OCSPA, as required by O.R.C. § 1345.09(B), for maintenance of this claim for relief as a class action.

339.    Defendants are liable to Plaintiffs Jennifer Wallace, Kirstine Holiness and Lynda Crilley and the Ohio Class for actual damages in amounts to be proven at trial, as well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under O.R.C. § 1345.09.

<u>NINETEENTH CLAIM FOR RELIEF</u>
**(Violation of the Oregon Unlawful Trade Practices Act, O.R.S. § 646.605, *et seq*.)**
**<u>(By Plaintiff Jamison Purry On Behalf of the Oregon Class)</u>**

340.    Plaintiff Jamison Purry on behalf of himself and the Oregon Class, repeats and reasserts each of the allegations contained above as if fully set forth herein.

341.    Chapter 646 of the Oregon Revised Statutes generally governs unlawful trade practices within the State of Oregon (the "OUTPA").  O.R.S. § 646.605, *et seq.*

342.    Under the OUTPA, "trade" and "commerce" mean "advertising, offering or distributing, whether by sale, rental or otherwise, any real estate, goods or services, and include any trade or commerce directly or indirectly affecting the people of this state."  O.R.S. § 646.605(8).

343. Under the OUTPA, "unconscionable tactics" include actions which "[k]nowingly take[] advantage of a customer's physical infirmity, ignorance, illiteracy or inability to understand the language of the agreement" and "[k]nowingly permit[] a customer to enter into a transaction from which the customer will derive no material benefit. O.R.S. § 646.605(9).

344. The OUTPA outlaws "any unconscionable tactic in connection with selling, renting or disposing of real estate, goods or services, or collecting or enforcing an obligation" O.R.S. § 646.607.

345. Further, the OUTPA outlaws practices which "[e]ngage[] in any other unfair or deceptive conduct in trade or commerce. O.R.S. § 646.608(1)(u).

346. In the course of business, Defendants actively misrepresented the actual likelihood of being able to find a job in their graduates' chosen field within six months of graduation. Through this misrepresentation, Defendants deceived Plaintiff Jamison Purry and Oregon Class members with respect to material facts regarding the value of a degree from DVU. Further, Defendants have engaged in trade practices with a tendency or capacity to deceive. Moreover, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices and/or concealment, suppression or omission of any material fact with intent that others rely upon such concealment or misstatement in connection with the sale of its educational services.

347. Further, Defendants, in the course of advertising and selling educational services, Defendants took advantage of Plaintiff Jamison Purry and Oregon Class members' lack of knowledge and/or understanding of Defendants' actual employment figures.

348. Defendants also allowed Plaintiff Jamison Purry and Oregon Class members to enter in to a commercial transaction from which they would derive no benefit.

349.    By failing to disclose the actual percentage of DVU graduates employed in their chosen field within six months of graduation and by marketing DVU degrees as highly likely to lead to obtaining a job within six months of graduation, Defendants have engaged in unfair or deceptive business practices in violation of the OUTPA.

350.    Defendants' unfair or deceptive acts or practices, including the "90%" representation, had a tendency or capacity to mislead, tended to create a false impression in potential and actual consumers of educational services, and were likely to and in fact did deceive reasonable consumers, including Plaintiff Jamison Purry and members of the Oregon Class about the true value of a DVU degree.

351.    Defendants knew or should have known that the "90%" representation was false and misleading.

352.    Defendants' misrepresentation regarding their actual job acquisition rates for students within six months of graduation made their degrees less valuable than if the "90%" representation had been accurate.

353.    Plaintiff Jamison Purry and members of the Oregon Class suffered an ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the actual job acquisition numbers for degrees conferred by DVU, Plaintiff Jamison Purry and members of the Oregon Class would not have enrolled at DVU or would have paid less for DVU's educational services.  Plaintiff Jamison Purry and members of the Oregon Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

354.    Defendants' unlawful acts and practices complained of herein affect the public interest.

355.     As a direct and proximate result of Defendants' violations of the OUTPA, Plaintiff Jamison Purry and the Oregon Class have suffered injury-in-fact and/or actual damage.

356.     Defendants are liable to Plaintiff Jamison Purry and the Oregon Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under O.R.S. § 646.638.

357.     Pursuant to O.R.S. § 646.638(2), notice of this complaint has been mailed upon filing to the Oregon Attorney General.

**<u>TWENTIETH CLAIM FOR RELIEF</u>**
**(Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law,**
**Pa. Stat. Ann., 73 P.S. §201-1)**
**<u>(By Plaintiff Nikita Benson on Behalf of the Pennsylvania Class)</u>**

358.     Plaintiff Nikita Benson on behalf of herself and the Pennsylvania Class, repeats and reasserts each of the allegations contained above as if fully set forth herein.

359.     This cause of action is brought pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL"). Plaintiff is a person as defined by 73 P.S. § 201-2(2). The educational services are "trade or commerce" within the meaning of the PUTPCPL.

360.     Defendants violated and continue to violate the PUTPCPL by engaging in the following practices proscribed by 73 P.S. § 201-2(4) in transactions with Plaintiff Nikita Benson and the Pennsylvania Class which were intended to result in, and did result in, the sale of the educational services in question:

>     (v)     Representing that […] the services have […] characteristics, […] uses [or] benefits […] which they do not have;

*     *     *

(vii)    Representing that […] the services are of a particular standard, quality, or grade […] if they are of another; and

\*     \*     \*

(ix)    Advertising services […] with intent not to sell them as advertised.

361.    Defendants violated the PUTPCPL by marketing and advertising the educational services in question in the manner described herein, when they knew, or should have known, that the labeling and advertisements were deceptive, false and misleading.

362.    Defendants were in a position to know, both from their own knowledge and from outside sources, that the "90%" representation was false and misleading.

363.    Defendants intended that Plaintiff Nikita Benson and members of the Pennsylvania Class would rely on the false and misleading representations, and any reasonable consumer would deem the false and misleading representations material to the purchase of the services. Plaintiff and members of the Pennsylvania Class would not have purchased DeVry's educational services or would have paid less for them had they known of Defendants' misrepresentations.

364.    Defendants are liable to Plaintiff Nikita Benson and the Pennsylvania Class for actual damages in amounts to be proven at trial or $100, whichever is greater, as well as including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under 73 P.S. §201-9.2.

### TWENTY-FIRST CLAIM FOR RELIEF
### (Violation of Utah Truth in Advertising Law, Utah Code Ann. § 13-11a-3)
### (By Plaintiff Heather Anderson on Behalf of the Utah Class)

365.    Plaintiff Heather Anderson on behalf of herself and the Utah Class, repeats and

reasserts each of the allegations contained above as if fully set forth herein.

366. This cause of action is brought pursuant to the Utah Truth in Advertising Law ("UTAL"). Plaintiff is a person as defined by Utah Code Ann. § 13-11a-2(7). The educational services are "goods and services" within the meaning of the UTAL.

367. Defendants violated and continue to violate the UTAL by engaging in the following practices proscribed by Utah Code Ann. § 13-11a-3 in transactions with Plaintiff Heather Anderson and the Utah Class which were intended to result in, and did result in, the sale of the educational services in question:

>    (e)     Represen[ting] that […] the services have […]
>            characteristics, […] uses [or] benefits […] which they do
>            not have;
>
>                   *      *      *
>
>    (g)     Represen[ting] that […] the services are of a particular
>            standard, quality, or grade […] if they are of another; and
>
>                   *      *      *
>
>    (i)     Advertis[ing] […] services […] with intent not to sell them
>            as advertised.

368. Defendants violated the UTAL by marketing and advertising the educational services in question in the manner described herein, when they knew, or should have known, that the labeling and advertisements were deceptive, false and misleading.

369. Defendants were in a position to know, both from their own knowledge and from outside sources, that the "90%" representation was false and misleading.

370. Defendants intended that Plaintiff Heather Anderson and members of the Utah Class would rely on the false and misleading representations, and any reasonable consumer would deem the false and misleading representations material to the purchase of the services.

Plaintiff and members of the Utah Class would not have purchased DeVry's educational services or would have paid less for them had they known of Defendants' misrepresentations

371.     Defendants are liable to Plaintiff Heather Anderson and the Utah Class for actual damages in amounts to be proven at trial or $2,000, whichever is greater, as well as including attorneys' fees, costs, and any other just and proper relief under Utah Code Ann. §13-11a-4.

**TWENTY-SECOND CLAIM FOR RELIEF**
**(Violation of the Washington Unfair Business Practices Act,**
**Rev. Code Wash. § 19.86.010, *et seq*.)**
**(By Plaintiffs Suzane Apodaca and Alex Haberer On Behalf of the Washington Class)**

372.     Plaintiffs Suzane Apodaca and Alex Haberer on behalf of themselves and the Washington Class, repeat and reassert each of the allegations contained above as if fully set forth herein.

373.     Chapter 19.86 of the Washington Revised Code generally governs unlawful trade practices within the State of Washington (the "WUBPA").  Rev. Code Wash. § 19.86.010, *et seq.*

374.     Under the WUBPA, "trade" and "commerce" mean "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington."  Rev. Code Wash. § 19.86.010(2).

375.     The WUBPA outlaws "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Rev. Code Wash. § 19.86.020.

376.     In the course of business, Defendants actively misrepresented the actual likelihood of being able to find a job in their graduates' chosen field within six months of graduation.  Through this misrepresentation, Defendants deceived Plaintiffs Suzane Apodaca and Alex Haberer and the Washington Class members with respect to material facts regarding the value of a degree from DVU.  Further, Defendants have engaged in trade practices with a tendency or capacity to deceive.  Moreover, Defendants engaged in unlawful trade practices by

employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices and/or concealment, suppression or omission of material facts with intent that others rely upon such concealment or misstatement in connection with the sale of its educational services.

377. Further, Defendants, in the course of advertising and selling educational services, Defendants took advantage of Plaintiffs Suzane Apodaca and Alex Haberer and the Washington Class members' lack of knowledge and/or understanding of Defendants' actual employment figures.

378. By failing to disclose the actual percentage of DVU graduates employed in their chosen field within six months of graduation and by marketing DVU degrees as highly likely to lead to obtaining a job within six months of graduation, Defendants have engaged in unfair or deceptive business practices in violation of the WUBPA.

379. Defendants' unfair or deceptive acts or practices, including the "90%" representation, had a tendency or capacity to mislead, tended to create a false impression in potential and actual consumers of educational services, and were likely to and in fact did deceive reasonable consumers, including Plaintiffs Suzane Apodaca and Alex Haberer and members of the Washington Class about the true value of a DVU degree.

380. Defendants knew or should have known that the "90%" representation was false and misleading.

381. Defendants' failure to disclose and active concealment of the benefits of their educational services was material to Plaintiffs Suzane Apodaca and Alex Haberer and the Washington Class. Defendants' misrepresentation regarding their actual job placement rates for students within six months of graduation made their degrees less valuable than if the "90%" representation had been accurate.

69

382.  Plaintiffs Suzane Apodaca and Alex Haberer and members of the Washington Class suffered an ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the actual job placement rates for degrees graduates of DVU, Plaintiffs Suzane Apodaca and Alex Haberer and members of the Washington Class would not have enrolled at DVU or would have paid less for Defendants' educational services.

383.  Defendants' unlawful acts and practices complained of herein affect the public interest as defined in Rev. Code Wash. § 19.86.093

384.  As a direct and proximate result of Defendants' violations of the WUBPA, Plaintiffs Suzane Apodaca and Alex Haberer and the Washington Class have suffered injury-in-fact and/or actual damage.

385.  Defendants are liable to Plaintiffs Suzane Apodaca and Alex Haberer and the Washington Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under § 19.86.090.

386.  Pursuant to § 19.86.095, notice of this complaint will be mailed upon filing to the Washington Attorney General.

<u>**TWENTY-THIRD CLAIM FOR RELIEF**</u>
**(Unjust Enrichment)**
<u>**(By All Plaintiffs on Behalf of the Nationwide Class)**</u>

387.  Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

388.  Plaintiffs bring this Count individually and on behalf of the members of the Nationwide Class.

389.    Plaintiffs and members of the Nationwide Class conferred benefits on Defendants by purchasing educational services.

390.    Defendants have been unjustly enriched in retaining revenues derived from Plaintiffs and Class members' purchases of the educational services.  Retention of that revenue under these circumstances is unjust and inequitable because Defendants misrepresented facts concerning the characteristics, qualities, and value of the educational services and caused Plaintiffs and Class members to purchase the educational services and to pay more for the educational services, which they would not have done had the true facts been known.

391.    Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, Defendants must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

**WHEREFORE**, Plaintiffs prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action;

B.    For an order declaring that the Defendants' conduct violates the statutes referenced herein;

C.    Awarding compensatory and punitive damages in favor of Plaintiffs, members of the Nationwide Class and the State Classes against Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

D.    Awarding injunctive relief against Defendants to prevent Defendants from continuing their ongoing unfair, unconscionable, and/or deceptive acts and practices;

E.    For an order of restitution and/or disgorgement and all other forms of equitable monetary relief;

F.    Awarding Plaintiffs and members of the Class their reasonable costs and expenses

incurred in this action, including attorney's fees; and

      G.     Awarding such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all claims so triable in this action.

Dated: December 5, 2016

Respectfully submitted:

By: */s/ Theodore B. Bell*
     Theodore B. Bell
Carl Malmstrom
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLC**
One Dearborn Street, Suite 2122
Chicago, IL 60603
Tel: (312) 984-0000
Fax: (312) 212-4401
Email: tbell@whafh.com
Email: malmstrom@whafh.com

Thomas H. Burt
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600
Fax: (212) 545-4653
Email: burt@whafh.com

Thomas J. McKenna
Gregory M. Egleston
**GAINEY MCKENNA & EGLESTON**
440 Park Avenue South, 5th Floor
New York, NY 10016
Tel: (212) 983-1300
Fax: (212) 983-0383
Email: egleston@gme-law.com
Email: tjmckenna@gme-law.com

*Counsel for Plaintiffs and the Putative Class*

72

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on December 5, 2016, he caused the foregoing document to be filed with the clerk of the United States District Court for the Northern District of Illinois by using the CM/ECF system, which will send notification of such filing to all counsel of record.


By: /s/ Theodore B. Bell
    Theodore B. Bell