UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEBBIE PETRIZZO, et al., | |
| Plaintiffs, | |
| v. | No. 16 CV 9754 |
| DEVRY EDUCATION GROUP INC., DEVRY UNIVERSITY, INC., and DEVRY/NEW YORK INC., | Judge Manish S. Shah |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Defendants ran a for-profit school, and its long-running advertising and marketing campaign focused on the employment rates of its graduates. After learning of the favorable employment outcomes enjoyed by past graduates, plaintiffs enrolled in and eventually graduated from the school. But they later learned that the advertised employment rates had been overstated, and they brought claims under the consumer protection statutes of 17 states and on a theory of unjust enrichment. Defendants move to dismiss for failure to state a claim. For the following reasons, the motion is granted.

**I.   Legal Standards**

A complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but need not accept legal conclusions or conclusory allegations. *Id.* at 678–79. With a

12(b)(6) motion, a court may consider only allegations in the complaint, documents attached to the complaint, and documents that are both referred to in the complaint and central to its claims. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

## II. Background

Plaintiffs are 39 individuals from across the country who attended and graduated from DeVry University, a for-profit school operated by defendants DeVry Education Group Inc., DeVry University, Inc., and DeVry/New York Inc. [21] ¶¶ 2, 9–50.[1] Plaintiffs enrolled at DeVry after seeing a representation that DeVry had made a cornerstone of its marketing campaign for years. [21] ¶¶ 9–50, 58–59. Specifically, DeVry claimed that 90% of its graduates who were actively seeking employment obtained new jobs in their fields of study within six months of graduation. [21] ¶ 59. DeVry made that representation (or variations of that representation) in its advertisements on television, radio, print, the internet, and social media, as well as in in-person sales pitches. [21] ¶¶ 56, 60–61. DeVry sometimes referred to certain class years when presenting the statistic, and it sometimes made the claim with respect to all graduates since 1975. [21] ¶ 60. Other variations of the representation included explanations and footnotes that provided greater specificity. [21] ¶ 61. And some identified a slightly different percentage, such as 87% or 92%. [21] ¶ 61. After over a decade, DeVry stopped advertising its graduates' employment rates in 2016. [21] ¶ 4.

---

[1] Bracketed numbers refer to entries on the district court docket.

The complaint provides examples of the advertisements in different media stating a 90% employment rate. One television commercial that aired in 2013 stated: "In 2012, 90% of DeVry University grads actively seeking employment had careers in their field in six months." [21] ¶ 64(a). That advertisement instructed viewers to "[j]oin the 90%." [21] ¶ 64(a). Commercials with similar statements aired between 2010 and 2016. [21] ¶ 64(b).

The complaint also identifies an example print advertisement that stated: "In 2012, 90% of DeVry University GRADS actively seeking employment HAD CAREERS in their field within six months of graduation.*" [21] ¶ 67. The asterisk led to the following explanation: "Figure based on 2012 graduated self-reporting data to DeVry University Career Services who were employed at graduation or actively seeking employment in their field after graduation. Does not include master's degree graduates or graduates who were not actively seeking employment, as determined by DeVry, or who did not report data on employment status to DeVry." [21] ¶ 67.

DeVry made similar statements in its social media accounts. [21] ¶¶ 65, 68. The initial call scripts employed by DeVry representatives between 2013 and 2016 included the sentence, "The DeVry University difference includes outstanding career outcomes – In 2012, 90% of DeVry University grads actively seeking employment had careers in their field within six months of graduation." [21] ¶ 69.

This claim of high employment rates suffered from one major flaw—it was inaccurate. DeVry did collect and maintain data on its students and their

3

employment, but it manipulated that data in two ways to arrive at an employment rate at or near 90%. [21] ¶¶ 71–76. Specifically, DeVry inflated the statistic by including among the 90% some graduates who had found jobs outside their fields of study or who had worked the same job after graduation that they did when they enrolled. It also decreased the pool of graduates considered by excluding certain graduates who were actively seeking a job but had not yet found one. [21] ¶¶ 72–73. Plaintiffs believe the actual percentage of job-hunting DeVry graduates who obtained new jobs in their fields of study within six months of graduation is lower than 90%, and that DeVry possesses a report containing conflicting data. [21] ¶¶ 75–76.

Each plaintiff saw some version of the 90% representation and relied upon it when deciding to enroll in DeVry. [21] ¶¶ 9–47. Plaintiffs later graduated from DeVry and were unable to find a job in their fields of study within six months of graduation. [21] ¶¶ 9–47. Plaintiffs seek to represent a nationwide class and an assortment of subclasses, and they bring 23 claims (some of which are pled in the alternative), based on consumer fraud statutes, unfair competition statutes, and other statutes from 17 states, and on a theory of unjust enrichment. Three counts allege claims on behalf of all plaintiffs: Count One alleges a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*; Count Two alleges a claim under the Illinois Private Business and Vocational Schools Act of 2012, 105 ILCS 426/5 *et seq.*; and Count Twenty-Three alleges a claim for unjust enrichment. The rest of the counts allege claims by subsets of

plaintiffs under various state statutes. DeVry moves to dismiss the complaint for failure to state a claim.

## III. Analysis

### A. Compliance with Rule 9(b)

Under Federal Rule of Civil Procedure 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." That means the complaint must describe the "'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (quoting *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009)). The rule applies to allegations of fraud and is implicated whenever a claim is based on fraudulent conduct. *Pirelli*, 631 F.3d at 446–47. But the degree of particularity required under the rule depends on the facts of a case. *Id.*

The complaint finds fault with an alleged misrepresentation by DeVry that 90% of DeVry graduates who were actively seeking employment obtained new jobs in their fields of study within six months of graduation. The complaint further identifies a number of different media through which variations of that representation were made from 2006 onwards; and it alleges that each plaintiff saw and relied on the representation at some time before enrollment. DeVry objects because the complaint does not identify any specific representation that any particular plaintiff saw or when or where they saw it.

5

Plaintiffs contend that when pleading a fraudulent scheme involving a number of misrepresentations over a number of years, it may be impractical to plead every single misrepresentation, and that representative examples will suffice under Rule 9(b). Plaintiffs rely on *Goldberg v. Rush University Medical Center*, 929 F.Supp.2d 807, 819 (N.D.Ill. 2013), in which the complaint provided examples of the fraudulent transactions that made up the scheme. *Id.* at 822. But unlike the examples provided in *Goldberg*, which were representative of a series of fraudulent transactions, each of which contributed to the defendant's liability, the examples provided here are not tied to the plaintiffs—a necessary element of their claims. Plaintiffs do not allege that they saw any of the specific representations. Indeed, most of the named plaintiffs could not have seen and been deceived by the example representations—the earliest example identified in the complaint is from 2010, and the majority of plaintiffs enrolled before then. They could not have been induced to enroll by a representation that had not yet been made.

The examples provided in the complaint allow for the inference that DeVry did include in a series of advertisements statistics related to its graduates' employment outcomes, but as noted above, the examples from between 2010 and 2016 do not apply to plaintiffs enrolled before 2010. The examples also vary in content, and some of those differences may have direct bearing on plaintiffs' claims. DeVry notes that one example provided in the complaint explicitly excludes Master's degrees from the employment statistic, while others do not. That matters because four plaintiffs earned Master's degrees, and seven plaintiffs do not allege

6

what type of degree they have. Each of those plaintiffs is alleged to have relied upon some variation of the 90% representation, but whether that variation includes the disclaimer might be dispositive of their claim. DeVry also argues that because none of the examples explicitly mentions "new jobs" and some expressly include among the 90% those graduates who were already employed at graduation, the examples are not representative of the statement that plaintiffs allege seeing—that 90% of DeVry graduates who were actively seeking employment obtained *new jobs* in their fields of study within six months of graduation. Plaintiffs do not respond to this point. Plaintiffs failed to adequately allege the form and content of the representations that specifically induced them to enroll at DeVry, especially considering the lack of uniformity among the representations alleged and the potential consequences of that variation. *See Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago*, 927 F.2d 988, 992–93 (7th Cir. 1991) ("[P]leadings must state the specific content of the false representations.").

Plaintiffs also argue that DeVry is in a better position to create a complete list of the representations it has made in its marketing and advertising over the years. That may be true, but DeVry cannot determine which representations were seen by plaintiffs and gave rise to their claims. Plaintiffs do not argue that information regarding the representations they saw and relied upon is uniquely within DeVry's control. Plaintiffs do not provide any reason as to why they should be excused from identifying in greater detail the fraudulent statements at issue in their own claims.

7

The complaint also fails to allege with sufficient particularity when plaintiffs saw any misrepresentation. Alleging that they "saw and relied upon Defendants' '90%' representation in choosing to enroll" is not a particularized allegation of time. Even if the message is alleged to have been ubiquitous, it is not enough to allege generally that each plaintiff was deceived by an unspecified variation of a statement conveyed through an unspecified medium at an unspecified time. The complaint must provide more details as to what the plaintiffs themselves saw and were deceived by—the content of the representation, the method of communication, and the time frame.

DeVry also argues that the complaint fails to adequately allege the falsity of the 90% representation. Read broadly, the complaint alleges that the percentage provided in each variation of the representation published between 2006 and 2016 was inflated, including those statements that used a percentage slightly higher or lower than 90%, and those statements that referred to specific class years or degree programs. Ordinarily, Rule 9(b) "does not require a plaintiff to plead facts that if true would show that the defendant's alleged misrepresentations were indeed false." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quoting *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992)) (internal quotation marks omitted). But when fraud is pled based on information and belief, as it is here, plaintiffs must show that "(1) 'the facts constituting the fraud are not accessible to the plaintiff' and (2) the plaintiff provides 'the grounds for his

8

suspicions.'" *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharm., Inc.*, 772 F.3d 1102, 1108 (7th Cir. 2014) (quoting *Pirelli*, 631 F.3d at 443).

Plaintiffs do not argue that the facts showing the falsity of the 90% representations are inaccessible, but the complaint makes clear that the graduate employment records are within DeVry's possession. Regarding their grounds for suspicion, plaintiffs allude to a complaint filed by the Federal Trade Commission alleging deceptive trade practices by DeVry, but they do not explain the connection between the FTC action and their allegations that the employment statistics were false. [21] ¶ 57.[2] That action may provide the corroboration plaintiffs need, but more explanation is needed to meet the Rule 9(b) standard.

Taking all inferences in plaintiffs' favor and considering the information available to them, the complaint fails to meet the heightened pleading standard of Rule 9(b) in alleging DeVry's fraudulent conduct. The complaint is therefore dismissed.[3]

---

[2] Without admitting the allegations, DeVry entered into a settlement with the FTC (with injunctive and monetary relief) shortly after plaintiffs here filed their complaint. *See* https://www.ftc.gov/system/files/documents/cases/161215_devry_stipulationrefinalorder.pdf.

[3] The parties also dispute whether the complaint alleges actionable conduct by DeVry Education Group, the parent company of the other two defendants. The complaint refers to the three corporate entities collectively, and alleges that they all made the misrepresentations at the heart of plaintiffs' claims. In a fraud case involving multiple defendants, the complaint must "inform each defendant of the nature of his alleged participation in the fraud." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994); *see also Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1329 (7th Cir. 1994) ("[D]efendants are entitled to be apprised of the roles they each played in the alleged scheme, and absent a compelling reason, a plaintiff is normally not entitled to treat multiple corporate defendants as one entity."). Plaintiffs argue that they cannot be more precise in their allegations because the actual identity of the source of the misrepresentations is uniquely within the defendants' knowledge—an exception to the rule that requires individualizing defendants' roles. *Vicom*, 20 F.3d at 778 n.5. The complaint

## B. Proximate Causation and Damages

The parties dispute whether the complaint adequately alleges a causal relationship between DeVry's conduct and plaintiffs' injury or a damages theory cognizable under the relevant state consumer protection statutes. Plaintiffs' alleged injury appears to be their inability to obtain new jobs in their fields of study within six months of graduation. But the parties agree that a damages theory based on plaintiffs' employment outcomes is invalid. A number of factors contribute to a successful job search, such as academic records, practical experiences, the applicant's efforts put into obtaining employment, her interviewing ability, the geographic area, and the economic climate and overall availability of jobs. *See Phillips v. DePaul Univ.*, 2014 IL App (1st) 122817, ¶ 55, 19 N.E.3d 1019, 1033–34 (1st Dist. 2014) (listing factors). The complaint does not address any of the circumstances surrounding plaintiffs' job searches and thus cannot plausibly allege the causal relationship, required in any tort claim, between an unfavorable employment outcome and any plaintiff's decision to enroll and remain enrolled in DeVry in reliance upon advertised employment data. *See Phillips*, 2014 IL App (1st) 122817, ¶¶ 54–55.

Plaintiffs instead propose a theory of damages based on the difference between what they actually paid and what they would have paid, if anything, had

---

alleges that all three defendants are responsible for the knowing dissemination of inaccurate employment statistics, and DeVry does not explain why that allegation is plausible as to the two subsidiaries but not as to the corporate parent. The request to dismiss DeVry Education Group under Rule 9(b) due to the lack of individualized allegations is therefore denied.

they known the true facts. The complaint alleges that they would have either paid less money or would not have enrolled at all, had they known the truth behind the advertised employment statistics. While benefit-of-the-bargain damages—the difference between the actual value of the property sold and the value the property would have had at the time of the sale if the representations had been true—are generally available in the context of consumer fraud claims in Illinois and elsewhere, *see, e.g., Mulligan v. QVC, Inc.*, 382 Ill.App.3d 620, 627 (1st Dist. 2008), DeVry argues that such a theory is too speculative to support a claim.

DeVry relies primarily on cases from Illinois and New York involving similar damages claims based on overpayment for a degree due to misrepresentations of employment and salary data. In *Phillips*, 2014 IL App (1st) 122817, the plaintiffs alleged damages under the Illinois Consumer Fraud and Deceptive Business Practices Act in the form of the difference between the tuition they paid for a degree based on alleged misrepresentations of employment and salary data for previous graduating classes and what they should have paid based on the true value of the degree.[4] *Id.* ¶ 58. The court concluded that the claim was speculative and that, because the school did not "explicitly promise or project" that its historical employment and salary data would be the same for individuals graduating years later, the plaintiffs had no reason to expect employment at the same rate as the

---

[4] A private plaintiff suing under the Consumer Fraud Act must allege actual damages by showing that he suffered "actual pecuniary loss." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (quoting *Mulligan*, 382 Ill.App.3d at 628). "Damages may not be predicated on mere speculation, hypothesis, conjecture or whim." *Phillips*, 2014 IL App (1st) 122817, ¶ 57 (citing *Petty v. Chrysler Corp.*, 343 Ill.App.3d 815, 823 (1st Dist. 2003)).

11

misrepresented historical averages. *Id.* ¶ 61. As a result, they had failed to plead how they were damaged. *Id.*

Similarly, in *Gomez-Jimenez v. New York Law School*, 943 N.Y.S.2d 834, 848 (N.Y.Sup.Ct. 2012), *aff'd on other grounds*, 956 N.Y.S.2d 54 (1st Dept. 2012), which addressed a claim under New York's General Business Law § 349, the court held that the plaintiffs' allegation of damages in the form of the difference between the allegedly inflated tuition paid and the "true value" of a degree was speculative, and that the complaint failed to "allege facts from which pecuniary damages can be inferred as a direct result of the alleged wrong," as required under the statute.[5] *Id.* at 847–48. The court refused to speculate as to the "true value" of a degree which allegedly misrepresented the chances that graduates could obtain certain employment outcomes. *Id.* at 849; *see also Bevelacqua v. Brooklyn Law School*, No. 500175/2012, 2013 WL 1761504, *9 n.13 (N.Y.Sup. Apr. 22, 2013) (dismissing claims under New York's General Business Law §§ 349 and 350 in part because the alleged damages—the difference between the inflated tuition paid by class members based on the defendant school's misrepresentations and the true value of the degree—was too speculative).

Plaintiffs cite to two cases of their own. In a California case, *Alaburda v. Thomas Jefferson School of Law*, No. 37-2011-00091898-CU-FR-CTL, 2012 Cal. Super. LEXIS 3092, *1 (San Diego Cty. Super. Ct. Nov. 29, 2012), the plaintiffs

---

[5] Under New York law, plaintiffs cannot recover the purchase price of a service on the basis that they would not have purchased it absent a defendant's acts or practices. *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999).

brought claims under California's Consumer Legal Remedies Act, alleging that they would not have enrolled in the defendant school if not for the defendant's misrepresentations. The court held that while proof of damages may be speculative, the complaint adequately alleged damages and reserved consideration of whether such damages may be proven until a later stage in the litigation. *Id.* at *5. Likewise, a court found that a complaint adequately pled proximate causation and damages, as required by the New Jersey Consumer Fraud Act, when it alleged that the plaintiffs would not have paid as much as they did had they known that only 56% of the defendant school's graduates, as opposed to 90–95% as represented, were employed in jobs for which the degree was required or used. *Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641, 653 (D.N.J. 2013).

I am persuaded by the reasoning in *Phillips* and *Gomez-Jimenez*. Plaintiffs emphasize their unfavorable employment outcomes, and they do not allege any method of measuring their damages. Based on the allegations, it would seem that the difference between the true value and the inflated value can only be based on speculative post-graduate career prospects and earning potential. Plaintiffs do not allege that any particular facet of the quality of their education or the degree they received was inadequate, or that they were promised a certain employment outcome. They do not allege that they had considered enrolling in or even applying to any other school with better employment prospects. They do not allege that tuition at schools with lower placement rates is cheaper than at DeVry. They allege only that what they received was worth less than what they had expected, based on

13

their perceived employment prospects. A consumer-fraud complaint need not allege a precise damages amount or a fully-developed mathematical model for calculating damages. But it needs to allege facts sufficient to show that plaintiffs suffered actual, measurable, non-speculative damages. The complaint here falls short.

## C. Nonresident Plaintiffs and the Illinois Consumer Fraud Act

Count One alleges a claim on behalf of all plaintiffs, including both Illinois residents and nonresidents alike, under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. DeVry argues that the claim must be dismissed as to all nonresidents, because a nonresident plaintiff can sue under the act only if the circumstances relating to the disputed transaction occurred "primarily and substantially in Illinois." *Crichton v. Golden Rule Insurance Co.*, 576 F.3d 392, 396 (7th Cir. 2009) (quoting *Avery v. State Farm Mutual Automobile Insurance Company*, 216 Ill.2d 100 (2005)). That is not a "bright-line rule but rather a highly fact-bound inquiry in which no single factor would be dispositive." *Id.*

DeVry concedes that plaintiffs who took courses while residing in Illinois can bring a claim under the Act. But most plaintiffs resided and attended their DeVry classes outside of Illinois. The complaint does not allege that any plaintiff saw misrepresentations in Illinois. Plaintiffs argue that the transactions occurred in Illinois, solely based on the fact that DeVry is headquartered in Illinois. Plaintiffs also contend that it can be plausibly inferred that DeVry's advertisements were disseminated from Illinois, DeVry contacted out-of-state customers over the telephone and internet, and DeVry received tuition payments in Illinois. But the

14

fact that a defendant is located in and conducts its business in Illinois is not enough to allow a nonresident to sue under the act. *See Crichton*, 576 F.3d at 397. When the only connection with Illinois is that a scheme to defraud originated in Illinois but plaintiffs interacted with the defendant outside of Illinois, the act does not apply to claims of nonresident plaintiffs. *Avery*, 216 Ill.2d at 189–90. With respect to claims by nonresidents, the circumstances of the alleged fraudulent activity did not occur primarily and substantially in Illinois. Those plaintiffs may not bring claims under the act.[6]

## IV. Conclusion

DeVry's motion to dismiss, [23], is granted. The complaint is dismissed without prejudice.

ENTER:

/s/ Manish S. Shah

Manish S. Shah
United States District Judge

Date: February 12, 2018

---

[6] DeVry asserts additional arguments for dismissal particular to the remaining statutory claims and the unjust enrichment claim. But those arguments are either redundant, relate to deficiencies that can be easily addressed, or relate to only class claims and not individual claims. Because the complaint is dismissed for the reasons stated above, I do not reach those arguments.